855 P.2d 562

**STATE of New Mexico, ex rel., Sammy J. QUINTANA, Chief Public Defender, and Rebecca Reese, District Public Defender for the Fifth Judicial District, Petitioners,**

v.

**The Hon. William J. SCHNEDAR, District Judge for the Fifth Judicial District, and the Hon. Billy V. Carpenter, Magistrate Judge for Chaves County, Respondents.**

No. 21256.

Supreme Court of New Mexico.

June 23, 1993.

574

Rebecca Reese, Dist. Public Defender, Carlsbad and Thomas E. Dow, Asst. Public Defender, Roswell, for petitioners.

Tom Udall, Atty. Gen. and Mary Catherine McCulloch, Asst. Atty. Gen., Santa Fe, for respondents.

## OPINION

FROST, Justice.

This original proceeding requires us to determine whether New Mexico district and magistrate courts have the statutory power to order the New Mexico Public Defender Department ("Department") to represent a particular "indigent" defendant when the Department decides that a particular defendant is not indigent and therefore not entitled to its legal services. De-

fendant Javier Gurrola was arrested and detained on drug charges. The Department did not designate an attorney to represent the defendant because, according to the Department, he was not eligible for indigent defense services under the Department's eligibility criteria, and he refused to contract to pay for his legal defense by the Department. At the defendant's arraignment, District Judge Schnedar ordered the Department to represent the defendant. Contending that the trial judge exceeded his jurisdiction by ordering it to furnish counsel for the defendant, the Department filed a Petition for Writ of Prohibition to prevent execution of Judge Schnedar's order. For the reasons contained herein, the petition is denied.

The Department contends that district and magistrate judges do not have authority to appoint the Department to represent defendants, primarily because it has exclusive statutory power to determine the indigence of defendants. It argues that the Public Defender Act ("PDA"), NMSA 1978, §§ 31–15–1 to –12 (Repl.Pamp.1984 & Cum. Supp.1992), specifically Section 31–15–7 (Cum.Supp.1992), supersedes conflicting provisions of the Indigent Defense Act ("IDA"), NMSA §§ 31–16–1 to –10 (Repl.Pamp.1984), and gives it this authority. For further support, the Department cites NMSA 1978, Section 34–6–46 (Repl.Pamp.1990), which states that "[t]he district court shall use a standard adopted by the public defender department to determine indigency of persons accused of crimes carrying a possible jail sentence," and identical provisions relating to other courts. *See* NMSA 1978, § 34–8A–11 (Repl.Pamp.1990) (metropolitan court); NMSA 1978, § 35–5–8 (Repl.Supp.1988) (magistrate court); NMSA 1978, § 32–1–56 (Repl.Pamp.1989) (children's or family court division of the district court).

■ As a backdrop to our discussion of New Mexico's statutory provisions for the legal representation of indigent defendants, we note the constitutional significance and foundation of the PDA and IDA, and the judiciary's role in the enforcement of these statutes. The Sixth Amendment to the U.S. Constitution requires that indigent criminal defendants be provided with legal representation at public expense to ensure the fairness of their trials. *Gideon v. Wainwright*, 372 U.S. 335, 344, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). The New Mexico Constitution embraces and parallels this ideal, stating that "[i]n all criminal prosecutions, the accused shall have the right to appear and defend himself in person, and by counsel." N.M. Const. art. II, § 14. There is no doubt that the judiciary has the inherent authority to guarantee the enforcement of constitutional civil liberty protections in criminal prosecutions. Accordingly, we have previously recognized that New Mexico courts have the inherent power to appoint counsel for indigent defendants in safeguarding the state and federal constitutional right to counsel. *See Richards v. Clow*, 103 N.M. 14, 16–17, 702 P.2d 4, 6–7 (1985). This consideration carries significant weight in our attempt to harmonize the statutes in question before us.

■ New Mexico statutes create an administrative system for enforcing the constitutional fundamental right to counsel, primarily through the PDA and the IDA. *State v. Rascon*, 89 N.M. 254, 257, 550 P.2d 266, 269 (1976). Construing these statutes, we must determine and effectuate the intent of the legislature. *State ex rel. Klineline v. Blackhurst*, 106 N.M. 732, 735, 749 P.2d 1111, 1114 (1988). In ascertaining legislative intent, the provisions of a statute must be read together with other statutes *in pari materia* under the presumption that the legislature acted with full knowledge of relevant statutory and common law. *Incorporated County of Los Alamos v. Johnson*, 108 N.M. 633, 634, 776 P.2d 1252, 1253 (1989). We also presume that the legislature did not intend to enact a law inconsistent with existing law. *Quintana v. New Mexico Dep't of Corrections*, 100 N.M. 224, 227, 668 P.2d 1101, 1104 (1983). This rule of statutory construction complements the notion that judicial repeal of legislation by implication is disfavored. *See Clothier v. Lopez*, 103 N.M. 593, 595, 711 P.2d 870, 872 (1985). Thus, two statutes covering the same subject matter should be harmonized and con-

strued together when possible, *Johnson*, 108 N.M. at 634, 776 P.2d at 1253, in a way that facilitates their operation and the achievement of their goals, *Miller v. New Mexico Dep't of Transp.*, 106 N.M. 253, 255, 741 P.2d 1374, 1376 (1987). Under these rules of statutory construction, we seek to harmonize the provisions of the PDA and IDA to the fullest extent reasonable, thereby facilitating the operation of our statutory system for providing assistance of counsel to indigent criminal defendants.

 There is no indication in the statutes that the PDA supersedes the IDA. Although the PDA was enacted after the IDA,[1] the Department's contention that the PDA supersedes the IDA is without merit. Incongruous language in the two statutes evidencing repeal by implication is entirely absent, and we cannot conclude that the PDA nullifies portions of the IDA simply because it was enacted more recently.

Furthermore, our courts have expressly held that the PDA and the IDA are *in pari materia. Rascon*, 89 N.M. at 257, 550 P.2d at 269. In *State v. Rascon*, we stated that the PDA creates the Public Defender Department to provide legal representation for defendants who are judicially determined to be indigent under the IDA. *Id.* at 257, 259–60, 550 P.2d at 269, 271–72. The Court of Appeals has also written, "A reading of the [IDA] and the [PDA] indicates that the two acts together provide a statutory scheme for providing counsel to indigent criminal defendants. The [IDA] gives indigent defendants the right to free counsel.... The [PDA], enacted later, provides an administrative agency for accomplishing this objective." *Herrera v. Sedillo*, 106 N.M. 206, 207, 740 P.2d 1190, 1191 (Ct.App. 1987).

 The IDA states that "a needy person who is being detained by a law enforcement officer" is "entitled to be represented by an attorney" who "shall be provided at public expense." Section 31–16–3. The IDA unequivocally directs the courts to determine whether a person is "needy." Section 31–16–5. Section 31–16–5, "Determination of indigence," states:

A. The determination of whether a person covered by [Section 31–16–5] is a needy person shall be deferred until his first appearance.... Thereafter, *the court concerned shall determine*, with respect to each proceeding, *whether he is a needy person.*

B. *In determining whether a person is a needy person* and the extent of his inability to pay, *the court concerned may consider such factors* as income, property owned, outstanding obligations and the number and ages of his dependents....

(Emphasis added.) The IDA repeatedly refers to the courts as the proper authority for assessing a defendant's indigence. *See, e.g.*, Section 31–16–2(C) (" 'needy person' means a person who, *at the time his need is determined by the court*, is unable, without undue hardship, to provide ... expenses of legal representation") (emphasis added). Construction of the PDA or other statutes addressing legal representation of indigent criminal defendants must therefore recognize and support the fact that courts are vested with the statutory authority to evaluate the indigence of criminal defendants in protecting the constitutional right to counsel.

 The PDA defines the statutory duties of the Department's district public defenders in Section 31–15–10: "The district public defender *shall represent* every person without counsel who is financially unable to obtain counsel and who is charged in any court within the district with any crime that carries a possible sentence of imprisonment." (Emphasis added.) The compulsory nature of the mandate "shall represent" requires the Department to represent defendants who (1) are "financially unable to obtain counsel" and (2) are charged with certain crimes. *Richards*, 103 N.M. at 15–16, 702 P.2d at 5–6 (stating that the duty of the Department to

---

1. The PDA was enacted in 1973, 1973 N.M.Laws, ch. 156, § 1, and the IDA was enacted in 1968, 1968 N.M.Laws, ch. 69, § 58.

represent indigent criminal defendants is mandatory and clear). Since the charge against a defendant will usually make it clear whether a defendant meets the second requirement for appointment, the operative question concerns who is "financially unable to obtain counsel" and therefore entitled to representation by the Department under Section 31–15–10. Because the legislature is presumed to act with full knowledge of the law, we hold that the legislature, understanding that courts determine indigence under the IDA, enacted this section of the PDA intending "every person without counsel who is financially unable to obtain counsel" to include all persons who courts determine are "needy" under the IDA. Therefore, under the administrative system of the PDA and IDA, when a court determines that a defendant is "needy," the defendant is "financially unable to obtain counsel" under the PDA, and the Department "shall represent" the defendant pursuant to Section 31–15–10, assuming the defendant is charged with a crime carrying a possible sentence of imprisonment.[2]

■■■ The Department argues that because it has the power to "adopt a standard to determine indigency," it, rather than the courts, has the power to determine whether a particular defendant will be represented by a public defender. Section 31–15–7, enumerating the powers and duties of the Chief Public Defender, is cited for this language, as well as other sections such as Section 34–6–46, which instructs the district court to use a standard adopted by the Department in determining the indigence of defendants.

As discussed, *Rascon* ruled that the IDA and PDA are *in pari materia*, the IDA unequivocally vests the determination of indigence within the power of the courts, and the PDA directs the Department to provide legal services for indigent defendants. 89 N.M. at 257, 259–60, 550 P.2d at 269, 271–72. *Rascon*, filed in April 1976, was decided under earlier versions of the IDA and PDA, substantially similar to the versions in effect today. *See* NMSA 1953, 2d Repl.Vol. 6 (1972 & Supp.1975), §§ 41–22–1 to –10; NMSA 1953, 2d Repl.Vol. 6 (1972), §§ 41–22A–1 to –12 (Supp.1975). The PDA, Section 31–15–7(B), was amended in June 1987 to grant the Department the authority to "adopt a standard to determine indigency." 1987 N.M.Laws, ch. 20, § 1. The statutes directing various courts to use the Department's standards for determining indigence were also enacted after our decision in *Rascon*. *See, e.g.,* 1987 N.M.Laws, ch. 20, § 3 (enacting § 34–6–46). But this does not alter our view that the IDA and PDA are *in pari materia*, nor diminish *Rascon*'s precedential value. The legislature was presumably aware of cases such as *Rascon* and *Herrera* when it enacted these provisions, and we must ask what effect these new sections were intended to have on our construction of the IDA and PDA. We cannot hold that the legislature intended the implicit revocation of the IDA through its passage of statutes authorizing the Department to adopt standards for the courts to use in determining indigence. Such interpretations forcing repeal by implication are disfavored, *Clothier*, 103 N.M. at 595, 711 P.2d at 872, and given the state of the law before these changes, we think that the legislature would have more defin-

---

**2.** Although neither party made arguments based on § 31–16–8 of the IDA, it is worth brief mention. Section 31–16–8 directs that payment of attorney's fees under the IDA be supplied from court funds, and this section presents the only possible obstacle to ruling that "needy persons" under the IDA are entitled to the services of the Department specifically, rather than the services of other court-appointed private counsel. This section conceivably could be construed to establish two separate systems of public defense, one provided by the Department and the other provided by independent, court-appointed counsel.

In our view, however, § 31–16–8 of the IDA can be read consistently with § 31–15–10 of the PDA, and it does not disrupt the statutory scheme. Furthermore, the fact that the legislature has not appropriated court funds for expenditure under the IDA for the appointment of independent counsel indicates its preference for designating public defenders under the PDA rather than independent counsel under the IDA to represent indigent defendants. *See, e.g.,* General Appropriation Act of 1992, 1992 N.M.Laws, ch. 94.

itively and unambiguously revoked the IDA if that were its intent.

▇▇ Instead, we believe that the legislature enacted these statutes to modify the existing scheme by increasing the role of the Department in determining indigence. The IDA provisions are not supplanted, and we find the IDA and PDA consistent as amended: The IDA obligates courts to determine indigence, the PDA directs the Department to adopt standards for determining indigence, and other statutes instruct courts to employ those standards. Under this comprehensive scheme, the Department's standards for determining indigence are the authoritative general guide. Courts should ordinarily follow the Department's standards and defer to its recommendations in their independent evaluation of whether a defendant is "needy." In the unusual circumstance, however, when the court finds that literal application of the Department's criteria would result in an improper deprivation of counsel to a particular defendant, the court may depart from the Department's decision to deny representation. The court may do so in its sound discretion to ensure the fundamental right to counsel through its inherent authority to safeguard constitutional requirements and the statutory directive to embrace this role.

## CONCLUSION

The inherent power of the judiciary to appoint counsel for indigent defendants is within the unique province of the courts to ensure the constitutionality of criminal prosecutions. The PDA and the IDA create the statutory apparatus for providing legal representation to indigent criminal defendants. These statutes and other provisions indicate that the Department will determine under its guidelines whether a particular defendant is indigent and therefore entitled to the legal assistance of a public defender. Courts should give great deference to such determinations by the Department, although they retain the ultimate authority to determine indigence and the discretionary ability to order the appointment of a public defender when it is necessary to protect the defendant's constitutional or statutory rights.

We have reviewed the facts as presented and find that the trial judge did not abuse his discretion in ordering the Department to represent the defendant. Accordingly, the alternative writ is quashed and the Petition for Writ of Prohibition is denied.

**IT IS SO ORDERED.**

BACA and FRANCHINI, JJ., concur.