2001-NMCA-105

36 P.3d 441

**Phyllis H. SUBIN, Chief Public Defender New Mexico Public Defender Department, Petitioner–Appellant,**

v.

**Williette ULMER, Respondent–Appellee.**

No. 22,169.

Court of Appeals of New Mexico.

Oct. 19, 2001.

Maureen A. Sanders, Sanders & Westbrook, P.C., Albuquerque, NM, for Appellant.

Nancy L. Simmons, Law Offices of Nancy L. Simmons, P.C., Albuquerque, NM, for Appellee.

### OPINION

PICKARD, Judge.

{1} This case involves the district court's authority to order the New Mexico Public Defender Department (Department) to pay expert witness fees on behalf of an indigent defendant who is represented by private counsel. Upon Respondent–Appellee's (Defendant's) request, the district court entered an order potentially requiring such payment.

The Department sought a writ of error, which we granted. We now affirm under the limited facts and circumstances of this case. However, although we do so, we also hold that there is no authority for the district court to have granted Defendant's request at the time it was granted.

### FACTS

{2} Defendant was charged with an offense that potentially required the services of expert witnesses to mount a defense. Defendant was qualified for Department representation, but her family was able to raise sufficient funds to retain private counsel. However, there were insufficient funds to pay for needed expert assistance. Defendant sought funds for such assistance from the Department, but was told that Department policy prohibited such assistance. Defendant thereafter filed an ex parte motion seeking a court order requiring the Department to treat her request in the same way it did requests from counsel hired by the Department to handle cases in which the Department had a conflict of interest. The district court heard the matter in chambers and, following the hearing, wrote a letter decision and filed an order granting Defendant's request. The district court required the Department to provide Defendant with the same services and utilize the same procedures it would if this were a case in which Defendant were represented by the Department.

### DISCUSSION

{3} We first discuss the district court's authority as a general proposition, a question we review de novo. We next discuss the application of that law to the unusual facts of this particular case.

### Authority of District Court in General

{4} Defendant and the court below rely on the power of the district courts to appoint counsel for indigent defendants and the constitutional requirement of meaningful access to justice, which includes access to expert witness services. *See Ake v. Okla.,* 470 U.S. 68, 77, 83, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985) (holding that states must provide expert witness services as part of their constitutional obligation to provide indigents with

meaningful access to justice); *State ex rel. Quintana v. Schnedar*, 115 N.M. 573, 578, 855 P.2d 562, 567 (1993) (holding that the courts have the power and responsibility to determine indigency and appoint counsel for indigent defendants). We do not quarrel with the proposition that courts have the power to insure that indigent defendants are provided adequate defense services, but we do not believe that the proposition applies to the facts of most cases like this case. Moreover, we find nothing in any constitutional doctrine or statutory provisions authorizing the district court generally to order the Department to provide services to people who are not its clients. Finally, authorizing courts to order the Department to expend its budget in ways that are not constitutionally or statutorily required appears to us to be an unwarranted intrusion into the administrative affairs of another agency.

{5} It is important to note at the outset that the Department's position is that it stood ready, willing, and able to provide expert witness assistance to Defendant as part of its duty to represent her, if she would only have accepted its representation. Thus, at the time the district court ruled, this case was not about a person who was being denied services. The State of New Mexico, either through its Public Defender Department or through its courts, was not proposing to deny Defendant access to anything to which she was constitutionally entitled. It only sought to put conditions on that entitlement, the same conditions with which every other indigent defendant must abide. According to current Department policy, to avail oneself of defense services provided by the Department, one must be a client of the Department or be represented by a lawyer on contract with the Department, and then must utilize Department procedures to access expert witness services.

{6} Defendant contends that she was willing to utilize Department procedures and was therefore in no different position from any Department client. We disagree. In our view, at the time the district court ruled, this case was about a person who wished to pick and choose what services she wanted and from whom, and not about a person who just wanted to be in the same position as any other indigent defendant. It is well-settled law that indigent defendants have no right to choose their own counsel or to insist that one attorney be substituted for another. *See State v. Hernandez*, 104 N.M. 268, 272, 720 P.2d 303, 307 (Ct.App.1986); *State v. Salazar*, 81 N.M. 512, 514, 469 P.2d 157, 159 (Ct.App.1970). Yet, what Defendant advocates would have permitted her and others like her to do just that.

{7} Since the district court's order was not necessary to insure that Defendant's constitutional rights were protected at the time it was entered, we next look to see whether there is statutory authority for the order. Defendant relies on the Indigent Defense Act, which, in several of its provisions, states that indigent defendants are entitled to representation and related services to the same extent as persons having their own counsel. *See* NMSA 1978, §§ 31–16–2(B), –3(A), –3(C) (1968, as amended through 1973). Defendant contends that the Public Defender Act, NMSA 1978, §§ 31–15–1 to –12 (1973, as amended through 2001), particularly in Section 31–15–7(B), created the Department and authorized it to provide indigent defendants, such as herself, with the services required by the Indigent Defense Act. Defendant contends that these two acts must be read together. We do not need, in this case, to determine whether the Department would be authorized to provide Defendant with the services she requests. The question we must address is whether the Department must provide those services without concomitant representation and under pain of court order.

{8} We review both the Indigent Defense Act and the Public Defender Act to see what they have to say about court orders. The only section to which our attention has been specifically directed is NMSA 1978, § 31–16–8 (1968). Section 31–16–8(B) requires that the court assigning counsel under the Indigent Defense Act shall pay attorney fees according to a schedule and shall pay reimbursement for direct expenses. Section 31–16–8(A)(2) states that payment of these fees and expenses shall be made from funds appropriated to the district court with respect to proceedings in the district courts.

{9} However, the parties agree that no funds have been appropriated to the district court for either counsel fees or expenses and that all such funds are contained in the Department's appropriation. Thus, if these statutes mean anything in terms of district court authority, they may mean that the district court can order the payment of expert witness expenses from the budgets of the district courts. But that is not what the district court ordered. The district court's order here was an order for funds to be paid by the Department. If the legislature had wanted district courts to have the authority to order funds to be paid by the Department, we believe it would have amended Section 31–16–8 at the time it either created the Department or put all indigent defense funding in the Department's budget. Such amendment would have provided that payment of funds ordered to be expended by the district courts will come from the Department's budget.

{10} Each party to this proceeding makes practical and ethical arguments about what powers a district court ought or ought not have to best provide indigent defense services. We do not believe that any of the arguments hit the mark. The question before us is not what is a better system, but instead what the constitution or statutes require. And, notwithstanding that the statutes arguably could be read to allow the Department to provide the services Defendant sought, we find nothing in them or in our general jurisprudence permitting courts to order the services in the absence of special circumstances not present when the district court entered its order.

{11} We are also not persuaded by the Department's argument that it had specifically requested that the legislature increase its budget so that it could provide defense services to private attorneys retained on behalf of indigent clients and was specifically turned down. Such action by the legislature does not necessarily mean such defense services are not permitted; it may mean only that the legislature thinks that such services can be provided within the existing budget. There being neither constitutional nor statutory authority for the district court's order at the time it was entered, we hold that the court erred in entering it. Due to the circumstances that we discuss in the next section of this opinion, however, we are constrained to affirm the order under the facts of this case as they have evolved.

{12} In closing on the issue of the courts' general powers, we wish to note that while the district court's order appears at first blush a reasonable and narrowly tailored effort to obtain better representation for more people, we question whether it will have that effect in the long run. As a practical matter, the Department must provide defense services to all clients found by the courts to be indigent and it must do so within budgetary constraints subject only to constitutional considerations. We are informed that the funds for services of experts are limited and are administered on a state-wide basis. The Department is ultimately responsible for the fair administration of those funds. If, in addition to the Department, all of the state's trial judges can also order funds to be made available to individual clients, the fair administration of the funds could well be compromised. It bears repeating that this case, at the time it was before the district court, was not a case about any particular individual or class of individuals getting less in the way of representation or defense services than the constitution requires. That being so, we see no reason for the district court to have interfered with the Department's administration.

{13} In so ruling, we wish to also make clear that we do not perceive a separation of powers issue to be present in this case. Our ruling is based on the absence of constitutional and statutory authority and may flow from prudential concerns. But, in appropriate cases, courts as guardians of the constitution or as interpreters of statutes may well order executive departments to make funding available as needed.

### Application to this Case

{14} The district court's order was entered in March of 2001, and the Department petitioned for a writ of error in April. We granted the writ and assigned the case to our general calendar. The Department sought a stay from the district court, which was not

ruled upon, and sought review of the district court's inaction on the stay in this Court. We granted a stay in August. The brief in chief was filed in August, and the answer brief was filed on October 1, together with a motion to expedite decision or lift the stay of the district court's decision. The grounds for the latter request were that trial was scheduled for October 29 and Defendant did not want any further delay inasmuch as the matter had been pending for three years. We note that Defendant has pending in front of the district court a motion to dismiss for speedy trial violations. We have expedited the decision, and we now lift the stay.

{15} Although we have ruled that, in general, district courts do not have constitutional or statutory authority to order the payment of expert witness fees from the Department, the present case at the present time is an example of a case in which one or another of Defendant's constitutional rights could be violated if the Department is not ordered to abide by the district court's order. We heard oral argument in the case on October 16, barely two weeks from the start of trial. Our opinion will not be issued until the matter is even closer to the trial setting. To say now that Defendant is required to choose Department representation, as we have held is required in the ordinary case, will necessarily mean another delay while new counsel prepares. To say that Defendant needs to choose to proceed without expert witnesses to preserve what is left of her right to speedy trial appears to us to put this case on the horns of a constitutional dilemma. We resolve the dilemma by giving effect to both constitutional rights in this case. *Cf. Simmons v. United States,* 390 U.S. 377, 394, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968) (stating "it [is] intolerable that one constitutional right should have to be surrendered in order to assert another"). Because of the delays necessarily caused by the time this case was in this Court, we believe that it is our constitutional duty to require the Department to follow the district court's order in this case.

## CONCLUSION

{16} The district court's order is affirmed. We had previously stayed it, and the stay is now lifted.

{17} **IT IS SO ORDERED.**

JAMES J. WECHSLER, Judge, concurs.

MICHAEL D. BUSTAMANTE, Judge (concurring in part and dissenting in part).

BUSTAMANTE, Judge (concurring in part and dissenting in part).

{18} I concur in the action of the Court lifting the stay. The combination of events described in the opinion and the march of time places Defendant in an intolerable situation which requires our action. However, the fact that we are willing-and have the apparent authority-to enforce this particular order against the Department speaks volumes about the real issue the case raises.

{19} The Department argues that by enacting the Public Defender Act (PDA) the legislature intended to create a "sole source" or "package deal" system of representation for indigent defendants in New Mexico. The Department asserts it has no authority to provide any assistance to persons unless they are its clients and it is providing full representation. The Department admitted at argument that its position is not viable if its interpretation of the PDA is not accurate. Defendant responds by reminding us that there is a constitutional right at stake and that the State has responded to its constitutional obligation by enacting both the Indigent Defense Act (IDA) and the PDA. Defendant argues that the IDA and PDA read together do not clearly require defendants to become full clients of the Department in order to receive benefits. The Defendant concedes that if New Mexico has a "sole source" system, her position would not be viable.

{20} I do not believe, and I do not believe the majority disagrees, that the IDA and PDA are clear on the question. The majority chooses not to resolve the issue. Given this basic lack of clarity, what role do the courts have to play in these circumstances? I believe the answer is provided by our Supreme Court in *State ex rel. Quintana v. Schnedar,* 115 N.M. 573, 855 P.2d 562 (1993). The specific holding in *State ex rel. Quintana* involved the court's power to determine indi-

gency and appoint counsel for defendants in the face of an argument by the Department that the PDA gave it exclusive statutory power to determine indigency. The broader rule of the case, however, is that the courts retain power and inherent authority to act "to guarantee the enforcement of constitutional civil liberty protections in criminal prosecutions" 115 N.M. at 575, 855 P.2d at 564.

{21} It seems inescapable to me that the courts have the power to do what the district court did here: That is, hear a motion for relief when the Department has refused a request for a benefit from a privately represented indigent Defendant, and order the Department to consider the request as it would a similar request made by one of its staff attorneys. As the district court said in its letter decision, "*State Ex Rel Quintana* makes clear that the District Court retains the ultimate authority to insure the Defendant's statutory and constitutional rights are protected.... It seems logical to me that if I can appoint a lawyer to represent a criminal defendant I should be able to insure that that lawyer can have the resources to provide that defense."

{22} It is part of the business of the courts to interpret and apply the law-statutory and constitutional. When the constitutional right is clear and the statutory law is honestly open to interpretation, the courts have an obligation to act. The prudential considerations the majority cites do not counsel inaction; they do counsel caution and circumspection. Viewed in that light, I can find no fault with the district court's well-measured order.