2006-NMSC-023

134 P.3d 753

**STATE of New Mexico, Plaintiff–Respondent,**

v.

**William P. BROWN, Defendant–Petitioner.**

**No. 28,471.**

Supreme Court of New Mexico.

April 24, 2006.

The Kortemeier Law Firm, Stephen Karl Kortemeier, Elephant Butte, NM, for Petitioner.

Patricia A. Madrid, Attorney General, Jacqueline R. Medina, Assistant Attorney General, Albuquerque, NM, for Respondent.

MCCML, P.A., Randi McGinn, Albuquerque, New Mexico, for Amicus Curiae, New Mexico Trial Lawyers Association.

Jones, Snead, Wertheim & Wentworth, P.A., Jerry Todd Wertheim, Santa Fe, NM, for Amicus Curiae, New Mexico Criminal Defense Lawyers Association.

Melissa Hill, Corrales, NM, for Amicus Curiae, New Mexico Criminal Defense Lawyers and New Mexico Trial Lawyers Association.

John Bigelow, Chief Public Defender, Sue Herrmann, Appellate Defender, for Amicus Curiae, New Mexico Public Defender Department.

## OPINION

MAES, Justice.

{1} Defendant–Petitioner William P. Brown (Brown), an indigent defendant represented by *pro bono* counsel, sought funding for expert witness fees from the New Mexico Public Defender Department (Department) in the district court. The district court denied Brown's request for funding, concluding that such funding was available only to indigent defendants represented by the Department. The Court of Appeals affirmed. We reverse. We hold that funding for expert witnesses should extend to those indigent defendants represented by *pro bono* counsel, in addition to those represented by the Department. This rule applies to the case at bar, similar pending actions, and to cases arising in the future.

### Background

{2} Brown was charged with three felony offenses and a misdemeanor offense in magistrate court. Stephen Kortemeier, a private defense attorney, entered his appearance on behalf of Brown. Brown completed an Eligibility Determination for Indigent Defense Services form. The magistrate court found Brown to be indigent and unable to obtain counsel, and ordered the appointment of Gregory Gaudette, a contract attorney for the Department, to represent Brown on the criminal charges. Mr. Gaudette filed an Entry of Appearance on behalf of Brown, along with a Notice of Intent to Interview State's Witnesses. Those were the only documents submitted by Mr. Gaudette in connection with Brown's case. Further, the record indicates that Mr. Kortemeier, not Mr. Gaudette, was listed as Brown's attorney of record on several documents. Therefore, it appears that Mr. Kortemeier served continuously as Brown's attorney since his initial entry of appearance, despite the appointment of Department counsel by the magistrate court.

{3} Brown was bound over to the district court for trial. Mr. Kortemeier filed a Declaration of Counsel stating that he had refunded to Brown his original retainer fee and had agreed to represent Brown without charge. Attached to that statement was an Agreed Order of Indigency, in which the State and Brown stipulated that Brown was indigent and had obtained *pro bono* representation. The Order provided that Brown was "entitled to all services, including waivers of fees and costs, normally provided by the State of New Mexico to an indigent defendant."

{4} Upon determining that Brown's case would require the use of experts, Mr. Kortemeier contacted the Department to request funds for expert witness fees. The Department denied the request on the grounds that it was only required to pay expert witness fees for indigent defendants represented by the Department or attorneys on contract with the Department. Mr. Kortemeier was informed that he was not eligible to become a contract attorney for the Department until the next contract period.

{5} Brown then filed a Request for Authorization to Incur Expenses & Fees in the district court. In that request, Brown asked the court for an order authorizing Brown to incur fees to be paid by the State. At the hearing on the request, the district court judge indicated that he could not order the Department to act without giving it notice and an opportunity to respond and issued an Order to Show Cause against the Department.

{6} The State filed a response to Brown's request to incur fees, arguing that the court could not order the Department to pay expert witness fees for a criminal defendant not represented by the Department. The district court set a presentment hearing on Brown's request to incur expenses and fees

and the proposed Order to Show Cause against the Department. At the conclusion of the hearing, the district court judge stated that he would not enter an order that interfered with the Department's management of its budget and its attorneys; if Defendant were to accept Department representation, he would receive attorney representation and an array of services standard to the Department, including expert witness fees; and if Brown wished to continue with private defense counsel, he would have to provide for his own expert witness fees. The judge then issued an order stating the above. The court certified the order for interlocutory appeal, noting that the case involved "a controlling question of law as to which there is substantial ground for difference of opinion and further, that an immediate appeal from this order may materially advance the ultimate termination of this case."

{7} The Court of Appeals granted interlocutory appeal from the order of the district court, and upheld the district court's decision. *State v. Brown*, 2004–NMCA–037, 135 N.M. 291, 87 P.3d 1073. Relying heavily on *Subin v. Ulmer*, 2001–NMCA–105, 131 N.M. 350, 36 P.3d 441, the Court of Appeals held that the district court had no authority to order the payment of expert witness fees for an indigent defendant who is represented by *pro bono* defense counsel. Brown appealed.

**Discussion**

{8} Because this case implicates two important constitutional rights, the constitutional right to counsel and the constitutional right to be provided with the basic tools of an adequate defense, our review is *de novo*. *See State v. Attaway*, 117 N.M. 141, 145, 870 P.2d 103, 107 (1994) (applying *de novo* standard of review to constitutional claims).

{9} Brown claims that under the Court of Appeals Opinion, he is being forced to choose between *pro bono* representation without expert witness funding and Department representation with expert witness funding which, Brown contends, is essentially a choice between the constitutional right to counsel and the constitutional right to be provided with the basic tools of an adequate defense. Brown asserts that such a choice is constitu-

tionally impermissible. Judge Vigil, dissenting below, agreed, stating: "The holding of the majority requires Brown to choose between these constitutional rights. However, it is well settled that forcing a criminal defendant to 'surrender' one constitutional right 'in order to assert another' is 'intolerable.'" *Brown*, 2004–NMCA–037, ¶ 47, 135 N.M. 291, 87 P.3d 1073 (Vigil, J., dissenting) (quoting *Simmons v. United States*, 390 U.S. 377, 394, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968)).

{10} The State, in contrast, argues that Brown's constitutional rights have not been impaired by the denial of funding for expert witnesses by the Department. The State argues that since the Department stood ready to represent Brown, "no one was proposing to deny [Brown] anything to which he was constitutionally entitled," and asserts that "the test is not whether [Brown] was offended by the choice offered to him, which in his mind, amounts to the denial of the right to counsel of choice, but rather, whether the system meets the State's constitutional obligations." The State argues that the administrative system enacted by the Legislature (the Indigent Defense Act and the Public Defender Act, discussed in depth below) establishes the constitutional requirements to be satisfied by the Department, and that the Department has fully complied with those standards. In order to refute Brown's claims to the contrary, the State goes to great lengths to demonstrate that American jurisprudence has clearly established that the Sixth Amendment merely guarantees the right to counsel, not the right to counsel of choice. The State maintains that Brown was offered the right to counsel through the Department, and thus cannot claim that he has been denied a constitutionally protected right.

{11} Our discussion will analyze these constitutional arguments as addressed by the United States Constitution, the New Mexico Constitution, New Mexico's legislation, and relevant case law.

{12} The right to counsel has long been recognized as a fundamental right at both the federal and state levels. The Sixth

Amendment of the U.S. Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right ... to have the assistance of counsel for his defense." U.S. CONST. amend. VI. That Sixth Amendment guarantee requires that an indigent criminal defendant be provided with counsel at public expense in order to ensure fairness in his or her trial. *Gideon v. Wainwright,* 372 U.S. 335, 344, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) ("[A]ny person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him."). The New Mexico counterpart to the federal rule is embodied in the New Mexico Constitution, which states: "In all criminal prosecutions, the accused shall have the right to appear and defend himself in person, and by counsel." N.M. CONST. art. II, § 14.

■ {13} The New Mexico Legislature has responded to these constitutional rights by enacting the Indigent Defense Act, NMSA 1978, §§ 31–16–1 to 31–16–10 (1968), and the Public Defender Act, NMSA 1978, §§ 31–15–1 to 31–15–12 (1973, as amended through 2001). These acts comprise the statutory framework for providing counsel to indigent criminal defendants and must be read in *pari materia. Herrera v. Sedillo,* 106 N.M. 206, 207, 740 P.2d 1190, 1191 (N.M.Ct.App.1987). The Indigent Defense Act states:

> A needy person ... is entitled to be represented by an attorney to the same extent as a person having his own counsel and to be provided with the necessary services ... of representation, including investigation and other preparation. The attorney, services and facilities and expenses ... shall be provided at public expense for needy persons.

Section 31–16–3(A). A "needy person" is defined as one "who, at the time his need is determined by the court, is unable, without undue hardship, to provide for all or a part of the expenses of legal representation from available present income and assets." Section 31–16–2(C).

{14} The Public Defender Act obligates the Public Defender's Office to "represent every person without counsel who is financially unable to obtain counsel and who is charged in any court within the district with any crime that carries a possible sentence of imprisonment." Section 31–15–10(B). The Public Defender Act also provides that the Chief Public Defender is to "adopt a standard to determine indigency." Section 31–15–7(B)(12).

■ {15} Taken together, the Indigent Defense Act and the Public Defender Act are complementary. The purpose of the Indigent Defense Act is to ensure the protection of a defendant's Sixth Amendment constitutional rights and the Public Defender Act provides the administrative framework for accomplishing that objective. *Herrera,* 106 N.M. at 207, 740 P.2d at 1191. However, our primary question in this case—whether indigent defendants represented by *pro bono* counsel are constitutionally or statutorily entitled to public funding for expert witness fees—is not addressed by these statutes and remains unanswered.

■ {16} The fundamental right to counsel has been developed and refined in several ways relevant to the issues presented in this case. The Sixth Amendment right to counsel includes the right of a criminal defendant to the effective assistance of counsel, *see Cuyler v. Sullivan,* 446 U.S. 335, 344, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), and the obligation of states to "provide indigent prisoners with the basic tools of an adequate defense." *Britt v. N.C.,* 404 U.S. 226, 227, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971). The United States Supreme Court expanded this principle in *Ake v. Oklahoma,* 470 U.S. 68, 83, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), and declared that an expert witness can constitute a basic tool of an adequate defense. New Mexico has embraced these ideals. In *State v. Turner,* 90 N.M. 79, 82, 559 P.2d 1206, 1209 (N.M.Ct. App.1976), the Court of Appeals explicitly acknowledged that the basic tools of an adequate defense must be made available to an indigent defendant, provided that the material requested is necessary to the defense. *See also State v. Delgado,* 112 N.M. 335, 345, 815 P.2d 631, 641 (N.M.Ct.App.1991) (recognizing, generally, the right of indigent defendants to be provided with the basic tools of an adequate defense).

{17} To decide the issue of whether the rights of indigent defendants to expert witnesses includes the right to funding to pay for those witnesses when the defendant is represented by a *pro bono* attorney, we must address two relevant New Mexico cases, *State ex rel. Quintana v. Schnedar*, 115 N.M. 573, 855 P.2d 562 (1993) and *Subin*, 2001–NMCA–105, 131 N.M. 350, 36 P.3d 441. At the outset, it is interesting to note that *Quintana* was decided earlier and enjoyed the full support of the members of this Court, while *Subin* resulted in a 2–1 split among the Court of Appeals panel in 2001. Neither party in *Subin* sought certiorari review by this Court.

{18} In *Quintana*, this Court held that New Mexico courts have the statutory power to order the Public Defender Department to represent a particular defendant when the Department has declined to do so. 115 N.M. at 575, 855 P.2d at 564. Noting the constitutional protections afforded indigent defendants, we stated, "[t]here is no doubt that the judiciary has the inherent authority to guarantee the enforcement of constitutional civil liberty protections in criminal prosecutions." *Id.* Further, courts "retain the ultimate authority to determine indigence and the discretionary ability to order the appointment of a public defender when ... necessary to protect the defendant's constitutional or statutory rights." *Id.* at 578, 855 P.2d at 567.

{19} As mentioned previously, the Court of Appeals relied heavily on *Subin* in reaching its decision in this case. In *Subin*, the Court of Appeals held that the district court had neither the constitutional nor statutory authority to order the Department to pay the expert witness fees for an indigent defendant who was represented by counsel *paid for* by members of the defendant's family. 2001–NMCA–105, ¶ 4, 131 N.M. 350, 36 P.3d 441. In reaching that conclusion, the court emphasized that the Department was not declining to represent the defendant and thus was not denying the defendant anything to which she was constitutionally entitled. *Id.* ¶ 5. Instead, the court asserted that the defendant wished to "pick and choose what services she wanted and from whom" and concluded that

"indigent defendants have no right to choose their own counsel or to insist that one attorney be substituted for another." *Id.* ¶ 6. The court upheld the Department policy requiring that an individual must be a client of the Department, or represented by an attorney on contract with the Department, in order to utilize Department procedures to receive defense services, including expert witness services. *Id.* ¶ 4.

{20} The *Subin* court also cited its reluctance to impose "an unwarranted intrusion into the administrative affairs of another agency." *Id.* Based on its practical and prudential concerns, together with its determination that there was no constitutional or statutory authority to rule otherwise, the court held that the district court had erred in ordering the payment of expert witness fees for that indigent defendant. *Id.* Despite that ruling, the Court of Appeals nonetheless ordered payment of the defendant's expert witness fees by the Department, reasoning that requiring the defendant to abide by its decision would unduly burden the defendant's constitutional right to a speedy trial. *Id.* ¶ 15.

{21} Judge Bustamante dissented in *Subin*. He stated that where "the constitutional right is clear and the statutory law [i.e., the Indigent Defense Act and the Public Defender Act] is honestly open to interpretation, the courts have an obligation to act." *Id.* ¶ 22 (Bustamante, J., concurring in part and dissenting in part). Relying on what he termed the "broader rule" of *Quintana*, he argued that courts "retain power and inherent authority to act 'to guarantee the enforcement of constitutional civil liberty protections in criminal prosecutions.'" *Subin*, 2001–NMCA–105, ¶ 20, 131 N.M. 350, 36 P.3d 441 (Bustamante, J., concurring in part and dissenting in part) (quoting *Quintana*, 115 N.M. at 575, 855 P.2d at 564). Quoting the district court's decision which had relied on *Quintana*, Judge Bustamante wrote: "It seems logical to me that if I can appoint a lawyer to represent a criminal defendant I should be able to insure that that lawyer can have the resources to provide that defense." *Subin*, 2001–NMCA–105, ¶ 21, 131 N.M. 350, 36 P.3d 441 (Bustamante, J., concurring in

part and dissenting in part) (quoted authority omitted).

{22} Brown argues that the holdings in *Subin* and *Quintana* are contradictory and asserts that *Quintana* should be the proper precedent for this Court to follow. The State argues that the Court of Appeals below was correct in its assertion that *Subin* and *Quintana* were not inconsistent and could be reconciled.

{23} Because there is apparent confusion regarding the holdings of these two cases, we hereby clarify that *Quintana* stands for the broad proposition that the courts serve as the ultimate guardians of an indigent defendant's constitutional rights. *Subin* addressed the situation in which the defendant, although indigent, nonetheless retained *paid* private counsel and was therefore not entitled to receive Department funding for expert witnesses.

{24} The facts in this case are distinguishable from *Subin*, because Brown's counsel is *pro bono*. We believe, therefore, that this case is more logically an extension of *Quintana*, rather than a "sequel" to *Subin*. In *Quintana*, this Court explicitly recognized the inherent authority of the district courts to ensure protection of the rights of indigent defendants. Here too, the Court is being asked to ensure the protection of an indigent defendant's constitutional and statutory rights.

{25} Therefore, we agree that Brown, an indigent defendant represented by *pro bono* counsel, is entitled both to the constitutional right to counsel and the constitutional right to be provided with the basic tools of an adequate defense. Although Brown was ini-

tially appointed a Department attorney, we do not believe that alone is enough to ensure that his constitutional rights are protected. Brown is also constitutionally entitled to be provided with the basic tools of an adequate defense. That right is not contingent upon the appointment of Department counsel; it is inherent under the state and federal Constitutions. We agree with Judge Vigil's dissenting opinion, that the majority in *Brown* "fail[ed] to give full recognition to Brown's constitutional right to Mr. Kortemeier's representation as his *pro bono* counsel and his constitutional right as an indigent to obtain the basic tools of an adequate defense at public expense." *Brown*, 2004-NMCA-037, ¶ 49, 135 N.M. 291, 87 P.3d 1073 (Vigil, J., dissenting). Thus, we conclude that since Brown's constitutional rights are compromised by his having been denied public funding for expert witness fees, there is a strong constitutional basis for us to reverse the Court of Appeals. We conclude that the more persuasive and reasoned approach in this case is that argued by Brown. That is, indigent defendants represented by *pro bono*, contract, or Department counsel should have equal access to expert witness funding *provided that* the expert witness meets all of the standards promulgated by the Department.

{26} We find additional, albeit secondary, support for our decision from the cases of our sister states. It appears that the majority of state courts that have examined this issue have concluded that under the U.S. Constitution and their respective state statutes, indigent defendants represented by *pro bono* or retained counsel are entitled to state funding for various defense costs, including expert witness fees.[1]

1. Each of the following states have recognized the right to state funded experts for indigent defendants with pro bono or retained counsel: *Ex Parte Sanders v. State*, 612 So.2d 1199 (Ala. 1993); *Dubose v. State*, 662 So.2d 1156 (Ala. Crim.App.1993); *Jacobson v. Anderson*, 203 Ariz. 543, 57 P.3d 733 (Ct.App.2002); *Tran v. Superior Court*, 92 Cal.App.4th 1149, 112 Cal.Rptr.2d 506 (2001); *People v. Worthy*, 109 Cal.App.3d 514, 167 Cal.Rptr. 402 (1980); *Cain v. State*, 758 So.2d 1257 (Fla.Dist.Ct.App.2000); *Thompson v. State*, 525 So.2d 1011 (Fla.Dist.Ct.App.1988); *Arnold v. Higa*, 61 Haw. 203, 600 P.2d 1383 (1979); *State v. Evans*, 271 Ill.App.3d 495, 208 Ill.Dec. 42, 648 N.E.2d 964 (1995); *Beauchamp v. State*,

788 N.E.2d 881 (Ind.Ct.App.2003); *English v. Missildine*, 311 N.W.2d 292 (Iowa 1981); *Kenton–Gallatin–Boone Public Defender, Inc. v. Stephens*, 819 S.W.2d 37 (Ky.1991); *Morton v. Commonwealth*, 817 S.W.2d 218 (Ky.1991); *State v. Green*, 631 So.2d 11 (La.Ct.App.1993); *Howell v. State*, 860 So.2d 704 (Miss.2003); *Widdis v. Second Judicial Dist. Court*, 114 Nev. 1224, 968 P.2d 1165 (1998); *In re Cannady*, 126 N.J. 486, 600 A.2d 459 (1991); *State v. Manning*, 234 N.J.Super. 147, 560 A.2d 693 (Ct.App.Div.1989); *State v. Boyd*, 332 N.C. 101, 418 S.E.2d 471 (1992); *State v. Burns*, 4 P.3d 795 (Utah 2000); *State v. Wool*, 162 Vt. 342, 648 A.2d 655 (1994); *State v. Wilkes*, 193 W.Va. 206, 455 S.E.2d 575 (1995).

{27} We disagree with the majority position taken below, that the Public Defender Act, enacted after the Indigent Defense Act, designated the Department as the exclusive source of services and funding for indigent defendants. *Brown*, 2004–NMCA–037, ¶¶ 25, 27, 29, 135 N.M. 291, 87 P.3d 1073. Instead, we again note that the courts are the ultimate guardians of indigent defendants' rights, and that the failure of the Legislature to identify a budget appropriation to the district courts does not indicate that it intended to disallow the district courts from taking action to obtain funding necessary to protect those rights.

{28} We also consider the conflicting policy interests implicated in this matter, specifically, the limited resources and the administrative burden on the Department versus the protection of indigent defendants' constitutional rights. In its brief as amicus curiae, the Department asserts that it should not be ordered to pay the expenses of non-clients. We recognize the enormous caseload carried by the Department and the ongoing budgetary constraints under which the Department must operate. The Department notes that it "is responsible for administering the limited funds appropriated by the Legislature for expert services for each of its nearly 60,000 clients statewide." We believe, however, the administrative mechanism already exists to facilitate distribution of funds to indigent defendants in need of expert witness fees who are represented by non-Department counsel. In at least some, if not all, of the judicial districts of New Mexico, the Department retains contract attorneys who are not officially employed by the Department, but who provide defense services for indigent defendants in lieu of official Department representation.[2] These attorneys typically work in areas without district offices or handle cases where there are ethical conflicts with Department representation. The Department has set up procedures for those attorneys to apply for and receive funding for the expert witnesses and other services their clients may require. It would seem that those procedures would work equally well for those attorneys who are representing indigent clients *pro bono*. Therefore, the administrative mechanism is already in place to handle requests for funding made by lawyers outside of the Department.

{29} Finally, there is the important consideration of the role of *pro bono* work in the legal profession. In their brief of amicus curiae, the New Mexico Criminal Defense Lawyers Association and the New Mexico Trial Lawyers Association (NMCDLA/NMTLA) argue strongly that following the Court of Appeals Opinion in this case would chill participation by the private bar in providing *pro bono* defense services for indigent defendants. According to the NMCDLA/NMTLA, "[m]ost volunteer lawyers cannot afford and should not be required to fund the investigators, expert witnesses and other costs involved in preparing an adequate defense." Noting the emphasis placed on *pro bono* work in the New Mexico Rules of Professional Conduct, the NMCDLA/NMTLA warns that most of its attorneys will not be able to continue *pro bono* criminal representation if the out-of-pocket costs of the case are not funded by the State. The State's only response to the *pro bono* issue is that attorneys offering to undertake *pro bono* representation may only take on those cases he or she can competently handle. If he or she does not have the financial resources to handle the case, he or she is obligated not to do so.

{30} We believe that *pro bono* representation should be encouraged and furthered wherever possible. Given the heavy workload of the Department and the emphasis on *pro bono* service throughout the legal community, it would seem that any lawyer who wishes to take on *pro bono* cases should not be discouraged solely because of lack of access to needed defense funds, such as expert witness fees.

{31} Based on the above discussion, we hold that constitutional considerations, together with the particular statutory framework in New Mexico and the important policy interests at stake, mandate that a

---

**2.** Some New Mexico counties are served entirely by contract counsel, including San Miguel, Mora, Guadalupe, Grant, Hidalgo, Luna, Socorro, Catron, Sierra, Torrance, Quay, Harding, De Baca, McKinley, Valencia, Sandoval, and Cibola.

defendant, established as indigent and represented by *pro bono* counsel, be afforded the same access to expert witness funding as other defendants represented by the Department. More specifically, where a defendant's indigence has been conclusively established, he or she is entitled to obtain funding for expert witness fees regardless of whether he or she is represented by the Department, by a contract attorney, or by a private *pro bono* attorney, subject, of course, to the same requirements imposed on all Department clients. Therefore, each defendant who seeks to establish his or her indigence should first obtain the necessary declaration from the court, as mandated by the Indigent Defense Act. Once indigence is conclusively established, each defendant should utilize the same procedures to apply for funding for expert services from the Department. Each application should be subject to identical review with funds distributed in some objective way, regardless of whether the defendant is represented by *pro bono* counsel, contract counsel, or the Department, and should be subject to the standard fee schedule promulgated by the Department. Treating similarly situated indigent defendants the same under the law will promote the "fair administration of justice" and ensure that constitutional and statutory obligations are satisfied.

## Conclusion

{32} For the reasons discussed above, we hold that indigent defendants represented by *pro bono* counsel are entitled to apply for and receive expert witness fees from the Department. This Opinion shall apply to the case at bar, similar pending actions, and to cases arising in the future. We remand to the district court for proceedings consistent with this Opinion and order that Brown's expert witness fees be paid from Department funds.

{33} **IT IS SO ORDERED.**

WE CONCUR: RICHARD C. BOSSON, *Chief Justice*, PAMELA B. MINZNER, PATRICIO M. SERNA, and EDWARD L. CHÁVEZ, *Justices*.