VIGIL, Justice (specially concurring). {33} The instant appeal highlights a chronic problem that plagues the criminal justice system in New Mexico. The district court characterized the “major issue” in this case as “the failure by the State of New Mexico ... to provide sufficient funds to pay for effective assistance of counsel for indigent defendants in criminal cases.” Thus, the district court’s orders were in direct response to a perceived crisis, fueled by a shortage in human and financial resources available to the LOPD for its work in Lincoln County. And because it is ultimately the duty of the courts to ensure the protection of constitutional rights, the district court took action. Although I agree with the holding and legal analysis laid out in the majority opinion explaining why those orders must be vacated, I write separately to discuss other facets of this important case which I believe are deserving of attention. {34} In its landmark 1963 opinion in Gideon v. Wainwright, 372 U.S. 335, 344 (1963), the United States Supreme Court held that the obligation to ensure that indigent defendants have access to counsel falls on the State, and where a defendant cannot afford an attorney, the State is responsible for providing counsel “in order to ensure fairness” in the proceedings. State v Brown, 2006-NMSC-023, ¶ 12, 139 N.M. 466, 134 P.3d 753. In response to Gideon, the New Mexico Legislature enacted the Indigent Defense Act (IDA), NMSA 1978, §§ 31-16-1 to -10 (1968), and the Public Defender Act (PDA), NMSA 1978, §§ 31-15-1 to -12 (1973, as amended through 2014). The IDA specifically mandates that “[t]he attorney, services and facilities and expenses and court costs shall be provided at public expense for needy persons.” Section 31-16-3(A). The PDA created a centralized public defender department (Department) and provides that the “public defender shall represent every person without counsel who is financially unable to obtain counsel and who is charged . . . with any crime that carries a possible sentence of imprisonment.” Section 31-15-10(C) (emphasis added). {35} Prior to these enactments, it was the responsibility of the courts to appoint counsel upon a finding that a defendant could not afford to hire an attorney. See, e.g., State v. Anaya, 1966-NMSC-144, ¶ 13, 76 N.M. 572, 417 P.2d 58 (“When the offense with which the defendant is charged is punishable by imprisonment in the penitentiary, the court is. required to assign counsel ‘if the prisoner has not the financial means to procure counsel[.]’ ” (citation omitted)). In New Mexico and elsewhere, these appointed attorneys were not paid for their services. However, systems in which attorneys were required to provide representation for free or very little money have not passed constitutional scrutiny.-Indeed, courts in several jurisdictions have determined that the failure to provide reasonable compensation for legal services amounts to a taking of property, in violation of the attorney’s Fifth Amendment rights. See, e.g., DeLisio v. Alaska Superior Court, 740 P.2d 437, 442 (Alaska 1987) (“[A] court appointment compelling an attorney to represent an indigent criminal defendant is a taking of property for which just compensation is required.”); Arnold v. Kemp, 306 Ark. 294, 302 (1991), holding modified by State v. Post, 311 Ark. 510 (1993) (“[T]he burden imposed on [the attorneys] is excessive to the extent that it constitutes a ‘talcing’ of their property and to limit them to a mere award of $1,000.00 for their work and skills is constitutionally unacceptable.”); State ex rel. Stephan v. Smith, 242 Kan. 336, 370 (1987) (“When the attorney is required to advance expense funds out-of-pocket for an indigent, without full reimbursement, the system violates the Fifth Amendment. Similarly, when an attorney is required to spend an unreasonable amount of time on indigent appointments so that there is genuine and substantial interference with his or her private practice, the system violates the Fifth Amendment.”). WhileNew Mexico courts still retain the authority to appoint counsel, since the enactment of the PDA, the Department has the responsibilities of determining eligibility and providing counsel to indigent defendants, and it pays those attorneys using appropriations it receives from the Legislature. See State ex rel. Quintana v. Schnedar, 1993-NMSC-033, ¶ 12, 115 N.M. 573, 855 P.2d 562 (explaining that the Department has the statutory authority to establish indigency guidelines and, while courts should defer to the department’s determinations, they “retain the ultimate authority to determine indigence and the discretionary ability to order the appointment of a public defender when it is necessary to protect the defendant's constitutional or statutory rights”). {36} Over time, the Department has had to fulfill its duties with extremely limited resources as it strives to provide the highest quality representation possible. The Department recently underwent a significant change in its structure in 2012, when the voters of New Mexico approved a state constitutional amendment to establish a “public defender commission” to oversee the “public defender department ... as an independent state agency” and “provide guidance to the chief public defender in the administration of the department and representation of indigent persons.” N.M. Const, art. VI, § 39 (internal quotation marks omitted). Prior to the amendment, the Department was “administratively attached” to the executive branch, and the governor had the power to appoint the chief public defender. See § 31-15-4(A), (C) (1985); compare § 31-15-5(A) (1978) with § 31-15-5(A) (2013). Now the Department is overseen and the chief public defender is appointed by the independent commission. Section 31-15-4(A) (2013). Yet, the State’s obligation to pay the costs of indigent defense through the funding of the Department remains unchanged. See Section 31-15-5(13) (remaining essentially unchanged after 2013 amendments). {37} The instant constitutional challenge to the Department’s fee schedule for providing payment to contract defense counsel throughout Lincoln County was presented in the context of one defendant’s case. Defense counsel argued that while the lack of resources provided to him by the Department has made it difficult to render effective representation, he would nonetheless be able to provide constitutionally effective assistance to his client in this case. Defense counsel relies upon Cronic and Young to support his constitutional claim, but as set forth in the majority opinion, those cases each address a situation in which circumstances surrounding a case impacted the defense attorneys’ ability to provide effective representation in that particular case, not the type of systemic or structural problem that the district court attempted to address below. Accordingly, the record before us does not present a sufficient basis for declaring there has been a denial of the right to effective assistance of counsel based on the wages paid to contract criminal defense attorneys in Lincoln County. {38} Other jurisdictions have been called upon to address structural problems like underfunding or low attorney compensation which amounted to a systematic deprivation of the right to counsel. In such cases, the focus is not on a post-hoc historical review of a criminal trial, but is instead based on the structure through which indigent defense is provided by the state. A structural challenge involves a realistic assessment of whether the state has provided an adequate framework for ensuring that the right to counsel is realized in cases involving indigent defense. Simmons v. State Pub. Def., 791 N.W.2d 69, 76 (Iowa 2010). Low pay for contract counsel has been the basis of some structural challenges, and where the pay is so low that it has resulted in a shortage of attorneys necessary to represent all defendants in need, courts have found that such arrangements do not satisfy a state’s obligation to provide counsel. See, e.g., Lavallee v. Justices in Hampden Superior Court, 442 Mass. 228, 246 (2004) (concluding there was a constitutional violation where low pay for contract attorneys had led so many of those attorneys to discontinue taking on contract cases that the nineteen petitioners had no lawyer to assist them during their arraignments or bail hearings); N.Y. Cty. Lawyers’ Ass’n v. N.Y., 763 N.Y.S.2d 397, 399-400 (2003) (holding that the state’s failure to increase the rates paid to contract counsel “violates the constitutional and statutory right to meaningful and effective representation” because it had caused a shortage of attorneys and led to court delays, denial of counsel, and ineffective assistance by the remaining attorneys who shoulder larger caseloads). At least one court has also found there was a constitutional violation where defendants received appointed counsel, but the attorneys were paid so low and had so many cases that it was “virtually impossible that the lawyer, no matter how competent or diligent, [would] be able to provide effective assistance.” Wilbur v. City of Mount Vernon, 989 F. Supp. 2d 1122, 1132 (W.D. Wash. 2013). In Wilbur, the court found that the total payments to contract counsel worked out to $10 or less per case and concluded that this violated the defendants’ right to counsel. Id. {39} In the absence of a constitutional violation, it is imperative in the administration of justice that we respect the independence of the Department and the Commission and refrain from interfering with their internal management decisions. See ABA Ten Principles of a Public Defense Delivery System 2, (February 2002), http://www.americanbar.org/content/ dam/aba/administrative/legal_aid_indigent_ defendants/ls_sclaid_def_tenprinciplesbookl et.authcheckdam.pdf (last viewed May 27, 2016) (emphasizing the importance ofhaving a public defense function that is “independent from political influence and subject to judicial supervision only in the same manner and to the same extent as retained counsel”). It is the role of the chief public defender and Commission to determine how best to allocate resources for the functions of the Department as a whole. These administrators are legally responsible for deciding how to use the available funding in a manner most beneficial to the overall needs of the Department. The judiciary will only intervene when presented with a case that demonstrates that the Department’s operations violate the constitution, either because of unlawful managerial decisions or a lack of resources necessary for providing the effective representation required under our Constitution and statutes. {40} Keeping New Mexicans safe is the ultimate goal of our criminal justice system, but we cannot expect this noble goal to be achieved without adequately funding all the public partners responsible for the fair administration of justice, including law enforcement agencies, district attorney’s offices, the public defender department, independent crime laboratories, and the judiciary. Failure to fund the criminal justice system will undermine the intended effect of laws enacted to ensure public safety. While the record in the instant case did not demonstrate a constitutional violation, it is a reminder that a system that effectively ensures public safety and protects constitutional rights comes at substantial fiscal cost. Accordingly, I respectfully concur. BARBARA J. VIGIL, Justice