Certiorari Denied, No. 31,825, July 30, 2009

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2009-NMCA-099**

**Filing Date:  June 30, 2009**

**Docket No. 27,812**

**STATE OF NEW MEXICO,**

    **Plaintiff-Appellee,**

**v.**

**JONATHAN DIGGS and**
**REBECCA MILLER,**

    **Defendants-Appellants.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Ross C. Sanchez, District Judge**

Gary K. King, Attorney General
Ann M. Harvey, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Karl Erich Martell, Assistant Appellate Defender
Santa Fe, NM

for Appellants

### OPINION

**WECHSLER, Judge.**

**{1}** Defendants Jonathan Diggs and Rebecca Miller appeal in advance of their trial from the district court's denial of their motions to dismiss on double jeopardy grounds. We consider whether the New Mexico Constitution and double jeopardy statute prohibit the State from prosecuting Defendants for child abuse because the Children, Youth and Families

Department (CYFD) previously investigated Defendants for child abuse and the Acoma Pueblo tribal court previously held a custody hearing on the same issues. We hold that there was no double jeopardy violation and affirm.

## BACKGROUND

**{2}**     Defendants' child was treated at Presbyterian Hospital for bruises and broken bones in different stages of healing, including rib fractures, clavicle fracture, radius fracture, humerus fracture, and femur fracture over the course of several months. As a result of these injuries, CYFD representatives contacted Defendants and informed them that they could avoid placing the child in foster care if they agreed to give the child's paternal grandparents guardianship. Defendants agreed to temporary guardianship. CYFD found the allegations of child abuse to be unsubstantiated. However, the child was not returned to Defendants because the child's paternal grandmother, a member of Acoma Pueblo, sought permanent guardianship in the Acoma Pueblo tribal court. The tribal court ultimately returned the child to Defendants.

**{3}**     Several months later, the State charged Defendants with five counts of child abuse. Defendants filed motions to dismiss on double jeopardy grounds. The district court denied Defendants' motions to dismiss and then approved the certification of the issue for appellate review. Defendants filed for immediate appeal pursuant to *State v. Apodaca*, 1997-NMCA-051, ¶ 17, 123 N.M. 372, 940 P.2d 478.

## PRE-TRIAL APPEAL

**{4}**     We first address the State's concern that Defendants have no right to a pre-trial appeal. The State argues that Defendants' pre-trial appeal is inappropriate under *Apodaca* because, unlike the defendant in *Apodaca*, Defendants in this case have not yet gone through a criminal trial. *See id.* ¶¶ 16-17. *Apodaca* held that a defendant may directly appeal to this Court a denial of the defendant's motion to dismiss charges based on double jeopardy grounds. *Id.* ¶ 17. In its explanation, *Apodaca* stated that certain interests override the unwanted result of "piecemeal appeals" and "justify invocation of the constitutional right to appeal when final judgment has not yet been entered[, but s]uch interests must be of the greatest importance." *Id.* ¶ 16. *Apodaca* further explained that "a defendant's right not to be subjected to a second trial for the same offense could not be remedied once the second trial has taken place." *Id.* The State argues that Defendants do not need protection against being subjected to a second trial for the same offense because they "have not been subjected to trial on the child abuse offenses."

**{5}**     The State's argument is circular in its rationale because it assumes the conclusion that is the very issue underlying the double jeopardy claim in this appeal—that Defendants have not previously been placed in jeopardy. If we were to deny Defendants the ability to file a pre-trial appeal on double jeopardy grounds because Defendants may not succeed in the claim, we would undermine the holding in *Apodaca*. Therefore, although we ultimately

2

hold Defendants' double jeopardy rights are not violated, we will not disallow Defendants from making the argument. Further, because even civil actions that are punitive in nature can trigger double jeopardy violations, we will not prohibit Defendants from making their double jeopardy argument under *Apodaca*, even absent a prior criminal trial. *See, e.g.*, *State v. Nuñez*, 2000-NMSC-013, ¶ 4, 129 N.M. 63, 2 P.3d 264 (filed 1999) (recognizing a double jeopardy violation based on a civil vehicle forfeiture).

**DOUBLE JEOPARDY**

**{6}** The New Mexico Constitution's double jeopardy clause states that "[n]o person shall . . . be twice put in jeopardy for the same offense." N.M. Const. art. II, § 15. Our double jeopardy statute similarly states that "[n]o person shall be twice put in jeopardy for the same crime." NMSA 1978, § 30-1-10 (1963). Our Supreme Court provided the basic framework for a double jeopardy analysis in *State ex rel. Schwartz v. Kennedy*, 120 N.M. 619, 626, 904 P.2d 1044, 1051 (1995): "(1) whether the [s]tate subjected the defendant to separate proceedings; (2) whether the conduct precipitating the separate proceedings consisted of one offense or two offenses; and (3) whether the penalties in each of the proceedings may be considered 'punishment' for the purposes of the Double Jeopardy Clause."

**{7}** The Court later modified the third *Schwartz* requirement in *City of Albuquerque v. One (1) 1984 White Chevy*, 2002-NMSC-014, 132 N.M. 187, 46 P.3d 94. To determine whether a sanction is remedial or punitive, *White Chevy* requires a reviewing court to evaluate the Legislature's "purpose in enacting the legislation, rather than evaluating the effect of the sanction on the defendant. Then the court must determine whether the sanction . . . was sufficiently punitive in its effect that, on balance, the punitive effects outweigh the remedial effect." *Id.* ¶ 11 (internal quotation marks and citation omitted); *see State v. Kirby*, 2003-NMCA-074, ¶¶ 19, 22, 133 N.M. 782, 70 P.3d 772 (utilizing the *Schwartz* test and the *White Chevy* modification in a double jeopardy analysis regarding securities violations).

**{8}** Relying on *Nuñez*, *Schwartz*, and *White Chevy*, Defendants argue that the State prosecuting Defendants for child abuse would be a violation of their double jeopardy protections because the sanction imposed by CYFD and the tribal court—removal of Child from Defendants for fourteen months during the CYFD investigation and the tribal court proceedings—was more punitive than remedial, and, thus, Defendants "are now being put in jeopardy a second time for the same acts." We review double jeopardy issues de novo. *State v. Saiz*, 2008-NMSC-048, ¶ 22, 144 N.M. 663, 191 P.3d 521.

**{9}** Our Supreme Court in *Schwartz* held that there was no double jeopardy violation because the civil sanction imposed on the defendant was more remedial than punitive. *See Schwartz*, 120 N.M. at 635, 904 P.2d at 1060. The defendant in *Schwartz* was subject to an administrative revocation of his driver's license, followed by prosecution for driving while intoxicated. 120 N.M. at 622-23, 904 P.2d at 1047-48. The Court held that the administrative proceeding and the criminal prosecution were two separate proceedings and were predicated on the same offense. *Id.* at 626-28, 904 P.2d at 1051-53. The Court's analysis therefore rested on whether the sanction was more remedial or punitive. The Court stated that a sanction that serves a remedial purpose, even if it also serves a retributive or

deterrent one, is not to be considered punishment for double jeopardy purposes. *Id.* at 633-34, 904 P.2d at 1058-59. The Court therefore found that the purpose behind the Implied Consent Act, 1978 NMSA, §§ 66-8-105 to -112 (1978, as amended through 2007), to enforce regulatory compliance and protect the public, was remedial and not punitive, regardless of the deterrent effect on the defendant. *Schwartz*, 120 N.M. at 635, 904 P.2d at 1060.

**{10}** In *White Chevy*, the Court again held that there was no double jeopardy violation because the civil sanction was more remedial than punitive. *See White Chevy*, 2002-NMSC-014, ¶ 2. In that case, the defendants were convicted on criminal driving while intoxicated charges, followed by civil forfeiture actions under a city ordinance. *Id.* ¶ 4. The Court held that the purpose of the ordinance at issue was to "protect the health and safety of the citizens . . . by abating motor vehicle nuisances." *Id.* ¶ 6. Because the ordinance was aimed at protecting the public, not punishing a defendant, the Court held that the sanction was remedial and, therefore, there was no double jeopardy violation. *Id.* ¶¶ 18-19. The Court reiterated that "[a]lthough a civil penalty may cause a degree of punishment for the defendant, such a subjective effect cannot override the legislation's primarily remedial purpose." *Id.* ¶ 11.

**{11}** Conversely, in *Nuñez*, the Court held that there was a double jeopardy violation after determining that a vehicle forfeiture under the Controlled Substances Act, NMSA 1978, §§ 30-31-1 to -41 (1972, as amended through 2008), was punitive in nature and, thus, combined with the first two *Schwartz* requirements, established a double jeopardy violation. *Nuñez*, 2000-NMSC-013, ¶¶ 55, 59, 94. The Supreme Court explained that, unlike *Schwartz*, the applicable statutes in *Nuñez*, concerning possession of drugs, "do not concern a regulated lawful activity, but rather an illegal criminal activity." *Id.* ¶ 52. The Court thus concluded that forfeitures under the Controlled Substances Act were not designed to be and could never be remedial, but, instead, "their purposes and intentions are primarily punitive." *Id.*

**{12}** In the present case, Defendants were subject to CYFD and tribal court proceedings regarding custody of the child, followed by the State prosecuting for criminal child abuse. We need not address the first and second *Schwartz* requirements because the third is dispositive in this case: whether the alleged penalty, Defendants' separation from the child during the CYFD and tribal court proceedings, would be deemed remedial or punitive upon evaluation of the Children's Code's purpose and effect. *See White Chevy*, 2002-NMSC-014, ¶ 11*; Schwartz*, 120 N.M. at 626, 904 P.2d at 1051.

**{13}** We begin by evaluating the Legislature's purpose as enumerated in the Children's Code.

> A.      first to provide for the care, protection and wholesome mental and physical development of children coming within the provisions of the Children's Code and then to preserve the unity of the family whenever possible. The child's health and safety shall be the paramount concern. Permanent separation of the child from the family, however, would especially be considered when the child or another child of the parent has suffered permanent or severe injury or repeated abuse. It is the intent of the

4

[L]egislature that, to the maximum extent possible, children in New Mexico shall be reared as members of a family unit;

B.  to provide judicial and other procedures through which the provisions of the Children's Code are executed and enforced and in which the parties are assured a fair hearing and their constitutional and other legal rights are recognized and enforced;

C.  to provide a continuum of services for children and their families, from prevention to treatment, considering whenever possible prevention, diversion and early intervention, particularly in the schools;

D.  to provide children with services that are sensitive to their cultural needs;

E.  to provide for the cooperation and coordination of the civil and criminal systems for investigation, intervention and disposition of cases, to minimize interagency conflicts and to enhance the coordinated response of all agencies to achieve the best interests of the child victim; and

F.  to provide continuity for children and families appearing before the children's court by assuring that, whenever possible, a single judge hears all successive cases or proceedings involving a child or family.

NMSA 1978, § 32A-1-3 (1999) (amended 2009); 2009 N.M. Laws, ch. 239. The Legislature sought to provide for the care, protection, and development of children and to ensure that procedures were in place to effectuate that goal. *See id.* The Legislature couched each aspect of the purpose in terms of benefits to and protection of children. In short, the Legislature clearly established that the purpose of the Children's Code is to ensure that the best interests of children are met. *See In re Christobal V.*, 2002-NMCA-077, ¶ 15, 132 N.M. 474, 50 P.3d 569 (recognizing that "the legislative purpose of the Children's Code is to provide judicial and other procedures through which the provisions of the Children's Code are executed and enforced and in which the parties are assured a fair hearing and their constitutional and other legal rights are recognized and enforced" (internal quotation marks and citation omitted)); *In re Jade G.*, 2001-NMCA-058, ¶ 19, 130 N.M. 687, 30 P.3d 376 (stating that the purpose section "is an instruction to interpret the [Children's] Code to provide procedures for fair hearings and enforcement of rights"). Nowhere in Section 32A-1-3 does it mention punishment against the parents or guardians.

**{14}**  We next consider whether, under the *White Chevy* test, "the sanction established by the legislation was sufficiently punitive in its effect that, on balance, the punitive effects outweigh the remedial effect." 2002-NMSC-014, ¶ 11. Defendants claim that their separation from the child for the fourteen months during which the CYFD and tribal court proceedings occurred constituted a sanction in which the punitive effect outweighed any remedial effect. Defendants were indeed separated from the child; however, the separation occurred because Defendant Miller, the primary caretaker at the time, agreed to temporary

5

guardianship based on the child's injuries documented at the hospital.

**{15}** Further, unlike the Controlled Substances Act in *Nuñez*, the Children's Code contemplates regulated lawful activity. *See Nuñez*, 2000-NMSC-013, ¶ 52. The Children's Code does not address sanctions at all, but instead seeks to protect the best interest of children, more akin to the purpose of protecting the public as stated in *Schwartz* and *White Chevy*. *See* § 32A-1-3. As discussed, the Legislature intended for the Children's Code "to provide for the care, protection and wholesome mental and physical development of children coming within the provisions of the Children's Code and then to preserve the unity of the family whenever possible. The child's health and safety shall be the paramount concern." Section 32A-1-3(A). While the Legislature made clear its intention that the unity of the family be preserved when possible, it also made clear that the child's "health and safety [is] the paramount concern." *Id.*

**{16}** In this case, CYFD initiated its investigation because of the child's injuries and recommendations from hospital personnel. The CYFD proceedings furthered the Legislature's purpose of providing for the care and protection of the child and ensured that the child's health and safety were the paramount concern. Nothing in the record indicates that the CYFD investigation or the ensuing temporary guardianship were triggered out of a desire or intent to punish Defendants. Moreover, although the tribal court held a hearing on the paternal grandmother's motion for permanent guardianship that resulted in longer separation of Defendants from the child, as discussed, Defendant Miller agreed to the temporary guardianship and, ultimately, regained custody of the child. We decline to hold that Defendants were punished by the occurrence of the CYFD and tribal court proceedings.

**{17}** Finally, Defendants argue that, pursuant to *Ashe v. Swenson*, 397 U.S. 436, 443 (1970), their prosecutions violate the collateral estoppel aspect of double jeopardy because "both CYFD and [the tribal court] found the abuse allegations to be unsubstantiated," CYFD and the State worked together on the CYFD investigation, and, therefore, the prosecution for child abuse cannot be litigated between these same parties. *Ashe* held that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Id.* Defendants have not referenced a final judgment that determined an issue of ultimate fact in the criminal prosecutions. Without any record to support Defendants' argument, we will not review their claim. *State v. Jim*, 107 N.M. 779, 780, 765 P.2d 195, 196 (Ct. App. 1988) ("It is [the] defendant's burden to bring up a record sufficient for review of the issues he raises on appeal."). As such, Defendants have failed to establish double jeopardy based upon the theory of collateral estoppel.

**CONCLUSION**

**{18}** We affirm the district court's denial of Defendants' motions to dismiss on double jeopardy grounds.

**{19}** **IT IS SO ORDERED.**

6

_____

**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____

**JONATHAN B. SUTIN, Judge**

_____

**TIMOTHY L. GARCIA, Judge**

Topic Index for *State v. Diggs,* No. 27,812

| | |
|---|---|
| **CD** | **CHILDREN** |
| CD-CC | Children's Code |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-CN | Child Abuse and Neglect |
| | |
| **CT** | **CONSTITUTIONAL LAW** |
| CT-DJ | Double Jeopardy |