ANN WALSH BRADLEY, J.
¶ 41. {dissenting). I agree with the majority that the four-corners rule includes consideration of exclusions as well as exceptions to those exclusions in an insurance policy. I write separately because I disagree with the majority's conclusion to foreclose a narrow exception to the four-corners rule. Majority op., ¶ 24.
¶ 42. The majority's decision today is at loggerheads with the national trend. It puts Wisconsin *641 among the 14 and ever dwindling number of jurisdictions that have clearly declined to recognize any exceptions to the four-corners rule.
¶ 43. In contrast, a majority of states allow for exceptions to the rule. The proposed exception here is narrower in scope and more modest in comparison to the exceptions adopted by many other jurisdictions.
¶ 44. But it is more than merely being out of step with a national trend that compels the conclusion that the majority opinion is infirm. It turns a blind eye to basic and heretofore well-recognized principles of insurance law: the duty to investigate, privity, and the broad application of the duty to defend.
¶ 45. Most egregious, however, is that the majority's approach is offensive to our system of justice. In a different context, when a court gives the jury its charge at the close of the trial, the court states: "let your verdict speak the truth, whatever the truth may be."[1] The majority opinion advises to the contrary.
¶ 46. According to the majority, facts known to the insurer that could support a duty to defend cannot be considered. Rather, the insurer has license to deny its duty to defend unless those known facts appear within the four corners of the complaint. A system of justice cannot countenance a rule that encourages insurers to defy reality by ignoring known facts beneficial to its insured. Such a rule distorts rather than promotes the concepts of fairness and justice.
¶ 47. Contrary to the majority, I conclude that when a complaint is factually incomplete or ambiguous, Wisconsin should adopt the narrow known fact exception to the four-corners rule as presented by Water Well.
*642 ¶ 48. I also conclude that the "Your Product" exclusion does not bar coverage. In reaching an opposite conclusion, the majority pays lip service to, but does not follow the longstanding rule that courts must liberally construe the allegations of the complaint and assume all reasonable inferences in favor of the insured.
f 49. Finally, I conclude that the "Your Work" exclusion likewise does not preclude coverage because the subcontractor exception to the "Your Work" exclusion applies. Accordingly, I respectfully dissent.
t — I
¶ 50. In reaching its "unequivocal conclusion that there are no exceptions to the four-corners rule, the majority fails to account for the limited circumstances in which refusing to consider known facts extrinsic to the complaint would unfairly deny an insured the benefit of a defense to which it is entitled. Majority op., ¶ 24.
¶ 51. Water Well seeks a limited exception to the four-corners rule in cases where: (1) the policy provides an initial grant of coverage based on facts alleged in the complaint; (2) the insurer denies a duty to defend its insured based on the application of specific policy exclusions but without seeking a coverage determination from a court; and (3) the insured asserts that the underlying complaint is factually incomplete or ambiguous. See majority op., ¶ 2.
¶ 52. The limited exception at issue here is consistent with the national trend to allow for exceptions to the four-corners rule. See 14 Steven Plitt et al., Couch on Insurance § 200:17 at 200-30 (3d ed. 2015) ("A modern trend is for insurers to conduct a reason *643 able investigation of the claims prior to making a determination on the duty to defend a particular lawsuit. Consequently, some jurisdictions look to actual knowledge of facts or extrinsic facts, in addition to the allegations of the complaint, when determining an insurer's duty.").
¶ 53. A majority of states allow for exceptions to the four-corners rule.[2] Water Well seeks an exception that is narrower in scope and more modest in compari *644 son to the exceptions adopted in many other jurisdictions. For example, in Washington, there are two exceptions to the four-corners rule. Woo v. Fireman's Fund Ins. Co., 164 P.3d 454, 459 (Wash. 2007). First, if it is not clear from the complaint that the policy provides coverage, the insurer must investigate and give the insured the benefit of the doubt that there is a duty to defend. Id.
¶ 54. Second, as is the case here, if the allegations in the complaint conflict with facts known or readily ascertainable by the insurer, or if the allegations in the complaint are ambiguous or inadequate, *645 facts outside the complaint may be considered. Id. Additionally, although extrinsic facts may trigger the duty to defend, an insurer may not rely on extrinsic facts to deny the duty to defend. Id.
¶ 55. Kansas provides another example. In Miller v. Westport Ins. Corp., 200 P.3d 419, 424 (Kan. 2009), the court explained that an insurer "must look beyond the effect of the pleadings and must consider any facts brought to its attention or any facts which it could reasonably discover in determining whether it has a duty to defend." Under this approach, "the universe of information from which th[e] potential [for coverage] must be ascertained is much greater than the universe used in an approach limited to the . . . pleading and the applicable insurance policy." Id. (internal citations and quotation omitted).
II
¶ 56. Not only is the majority opinion out of step with the national trend and at odds with the majority of states, it also contravenes basic principles of insurance law.
A
¶ 57. A basic principle of insurance law is that the insurer is to investigate the facts when a claim is made. Trinity Evangelical Lutheran Church and Sch.-Freistadt v. Tower Ins. Co., 2003 WI 46, ¶ 54, 261 Wis. 2d 333, 661 N.W.2d 789.
¶ 58. This principle is supported by Marks v. Houston Cas. Co., 2016 WI 53 ¶ 41, 369 Wis. 2d 547, 881 N.W.2d 309, which is being released concurrently with this decision today. In Marks, we explain that *646 " '[t]he applicability of an exclusion, however, is rarely obvious from the allegations in the complaint. Insurers often have to rely on investigation, discovery and other information not stated in the complaint to determine whether an exclusion applies.'" Id. (citing Peter F. Mullaney, Liability Insurers' Duty to Defend, Wis. Law., at 10-11 (July 1995)).
¶ 59. The two opinions released concurrently today appear facially inconsistent in regards to the duty to investigate. Marks supports the duty to investigate, and the majority here discards it. In contravening this basic principle of insurance law, the majority incentiv-izes an insurer to disregard its factual investigation and to pretend that it cannot see a known fact which would give rise to a duty to defend.
¶ 60. The exceptions to the four-corners rule in other jurisdictions recognize this basic principle. For example, in Washington, if it is not clear from the complaint that the policy provides coverage, the insurer "must investigate" and give the insured the benefit of the doubt that there is a duty to defend. Woo, 164 P.3d at 459.
¶ 61. Likewise, in Oklahoma an insurer has a duty to defend "whenever it ascertains the presence of facts that give rise to the potential of liability under the policy." First Bank of Turley v. Fid. and Deposit Ins. Co. of Md., 928 P.2d 298, 303 (1996). An insurer's duty to defend is determined on the basis of information provided to the insurer from the pleadings, the insured, and other sources available to the insurer. Id.
B
¶ 62. Also integral to insurance law, and contract law in general, is the concept of privity. As Judge Riley aptly explains in his dissent below, the approach taken *647 by the majority negates the concept of privity. Water Well Sols. Serv. Grp. Inc. v. Consol. Ins. Co., 2015 WI App 78, ¶ 24, 365 Wis. 2d 223, 871 N.W.2d 276 (Reilly, P.J. dissenting). He admonishes that "[i]t is absurd to allow an entity that has no privity of contract to dictate whether the contract provides defense and coverage." Id. Emphasizing the problem with the unilateral control of a third-party, he observes that the majority's approach "allows a litigant who is not a party to a contract of insurance to unilaterally control whether . . . the [] policy provides coverage when that litigant has no privity in the contract." Id., ¶ 21.
¶ 63. Yet again, other jurisdictions allow for an exception to the four-corners rule when a third-party not in privity to an insurance contract fails to allege facts relevant to the duty to defend in its complaint. As the Supreme Court of Montana explained, an insurer cannot ignore knowledge of facts because a complaint drafted by a third-party does not allege facts of which the insurer has knowledge. Revelation Indus. Inc. v. St. Paul Fire & Marine Ins. Co., 206 P.3d 919, 928 (Mont. 2009). Under these circumstances, an insurer may not "ignore information in its possession that may give rise to coverage simply because the complaint fails to recite it, and thereupon refuse to defend." Id.
C
¶ 64. A third basic principle of insurance law is that the duty to defend is broader than the duty to indemnify. Fireman's Fund Ins. Co. of Wis. v. Bradley Corp., 2003 WI 33, ¶ 20, 261 Wis. 2d 4, 660 N.W.2d 666. Nevertheless, the majority opinion does just the opposite and circumscribes the duty to defend.
¶ 65. The Connecticut Supreme Court eschewed the absolutist approach that the majority now em *648 braces and determined that such an approach would narrow the duty to defend. It explained that a "wooden application" of the four-corners rule would "render the duty to defend narrower than the duty to indemnify." Hartford Cas. Ins. Co. v. Litchfield Mut. Fire Ins. Co., 876 A.2d 1139, 1146 (Conn. 2005); see also Fitzpatrick v. Am. Honda Motor Co., 575 N.E.2d 90, 92 (N.Y. 1991) ("where the insurer is attempting to shield itself from the responsibility to defend despite its actual knowledge that the lawsuit involves a covered event, wooden application of the 'four corners of the complaint' rule would render the duty to defend narrower than the duty to indemnify — clearly an unacceptable result."). Thus, the Hartford court reasoned that "the sounder approach is to require the insurer to provide a defense when it has actual knowledge of facts establishing a reasonable possibility of coverage." Id.
1-H 1 — 1 1 — 1
| 66. Prior Wisconsin decisions have likewise considered an exception to the four-corners rule when the allegations of the complaint conflict with the known facts of the case or where the allegations are ambiguous or incomplete:
[T]here are also a number of cases involving special situations not covered directly by the general rules . . . These special situations exist particularly where there is a conflict of allegations and known facts [and] where the allegations are ambiguous or incomplete ....
Estate of Sustache, 2007 WI App 144, ¶ 11, 303 Wis. 2d 714, 735 N.W.2d 186, aff'd, sub nom. Estate of Sustache v. Am. Family Mut. Ins. Co., 2008 WI 87, 311 Wis. 2d 548, 751 N.W.2d 845 (citation omitted); see also Grieb v. Citizens Cas. Co. of New York, 33 Wis. 2d 552, 148 N.W.2d 103 (1967).
*649 ¶ 67. As the court of appeals explained in Sus-tache, it is reasonable to consider a situation where the facts of a case merit a defense, but the third-party complaint fails to allege those facts. 303 Wis. 2d 714, ¶ 20. In that situation "it would seem that the insured should be entitled to a defense for which the insurer has been paid a premium. The four-corners rule shuts down that entitlement." Id.
¶ 68. Furthermore, Wisconsin has already allowed known facts extrinsic to the complaint to be considered in limited exceptions to the four-corners rule. In Berg v. Fall, 138 Wis. 2d 115, 122 405 N.W.2d 701 (Ct. App. 1987), the court of appeals considered extrinsic facts because there was a conflict between the allegations in the complaint and the actual facts of the case. The Berg court emphasized that an insurer's duty to defend may require consideration of extrinsic facts when "the pleadings allege facts that are within an exception to a policy but the true facts are within, or potentially within, policy coverage and are known or are reasonably ascertainable by the insurer." Id. at 122-123 (citing 7C Appleman, Insurance Law and Practice, sec. 4683 at 56 (1979)).
¶ 69. Admittedly, this court has previously declined to follow Berg. In a footnote in Doyle v. Engelke, we explained that Berg is contrary to a "long line of cases in this state which indicate that courts are to make conclusions on coverage issues based solely on the allegations within the complaint." 219 Wis. 2d 277, 284 n.3, 580 N.W.2d 245 (1998); see also Smith v. Katz, 226 Wis. 2d 798, 815-16, 595 N.W.2d 345 (1999). However, none of these decisions foreclosed the possi *650 bility of allowing for a known fact exception in cases such as this when the allegations in the complaint are incomplete or ambiguous.[3]
IV
¶ 70. Rather than acknowledge that there are limited circumstances in which a duty to defend analysis may allow for consideration of known facts extrinsic to the complaint, the majority asserts that its rigid four-corners analysis benefits an insured even after its insurer unilaterally denies coverage. Majority op., ¶ 26. According to the majority, under the four-corners rule "a plaintiff has both the opportunity and the incentive to file an amended complaint" if discovery results in additional facts that would trigger a duty to defend. Id. Thus, the majority reasons that because a plaintiff will want coverage for the defendant-insured, it will amend its complaint to trigger the duty to defend. Id. (citing Sheila M. Sullivan et al., Anderson on Wisconsin Insurance Law § 7.27 at 29 (7th ed. 2015)).[4]
*651 ¶ 71. The majority's hypothetical solution to an unfair denial of the duty to defend fails to take into account the realities of litigation. An assumption that a plaintiff will seek insurance coverage does not apply in every case, such as when a plaintiff wishes to apply pressure to a defendant who has the capacity to satisfy a judgment without insurance. Even if a plaintiff is inclined to amend the complaint, a defendant whose insurer has unilaterally denied the duty to defend will have to provide for the costs of its own defense until some unknown date when the plaintiff may amend the complaint. Not every insured can bear the costs of its own defense during prolonged litigation and may be forced to settle a meritless claim out of necessity.
¶ 72. In this case, the majority's repeated refrain that the four-corners rule benefits the insured rings hollow. See majority op., ¶ 3 ("we reject Water Well's request to craft a limited exception to the four-corners rule, which has long endured to the benefit of Wisconsin insureds"); see also majority op., ¶ 25 ("We have applied the four-comers rale, without exceptions, in duty to defend cases for so long because it generally favors Wisconsin insureds."); majority op., ¶ 26 ("The four-comers rule ultimately favors insureds in another way.").
¶ 73. One has to wonder if the majority's absolutist application of the four-corners rule is as beneficial to insureds as the majority proclaims, then why is the insured losing here?
¶ 74. Its proffered concerns regarding the consideration of extrinsic facts are equally unpersuasive. According to the majority, recognizing exceptions to the four-corners rule would require insurers to "imagine claims the plaintiff might have made." Majority op., 1 25 n. 15. The majority conjures a scenario in *652 which "this judicially-created burden" would "rewrite the contractual duty to defend to be triggered whenever any claim is made rather than only those claims covered under the actual policy terms." Id.
¶ 75. The majority's reasoning is misguided because allowing consideration of extrinsic facts in this case would not require Consolidated to imagine any claims other than those the plaintiff has already alleged. As the majority acknowledges, Consolidated does not dispute that there is an initial grant of coverage based on the claims alleged in the complaint. Majority op., ¶ 35. Instead, Water Well seeks to introduce facts extrinsic to the complaint in order to support its argument that the "Your Product" exclusion, invoked by Consolidated in its unilateral denial of its duty to defend, does not apply.
¶ 76. A rule that would create a presumption in favor of an insured's duty to defend is consistent with an insurer's broad duty to defend. See, e.g., Olson v. Farrar, 2012 WI 3, ¶ 2, 338 Wis. 2d 215, 809 N.W.2d 1. As this court has repeatedly declared," [i] f there is any doubt about the duty to defend, it must be resolved in favor of the insured." Elliot v. Donahue, 169 Wis. 2d 310, 321, 485 N.W.2d 403 (1992).
¶ 77. The majority recites the law regarding an insurer's broad duty to defend, and acknowledges that its decision may circumscribe that duty. See majority op., f 30 n. 17. Given that even the majority recognizes that an insurer's unilateral refusal to defend is disfavored, I fail to understand how a rule that encourages insurers to refuse, rather than provide, a defense is consistent with this court's well-established prec *653 edent.[5] Majority op., ¶ 27 (citing Liebovich v. Minn. Ins. Co., 2008 WI 75, ¶ 55, 310 Wis. 2d 751, 751 N.W.2d 764).
¶ 78. At the heart of its analysis, the majority protests the efficacy of the known fact exception and predicts dire consequences if it is adopted. Such protests and predictions are out of step with the national trend and prove unpersuasive. The majority of states that have adopted exceptions have not reported the hypothetical quagmires forewarned by the majority. Indeed, the sky above those states has not fallen.
V
¶ 79. The majority pays lip service to its obligation to liberally construe the allegations contained in the complaint, assume all reasonable inferences from the allegations made in the complaint, and resolve any ambiguity in favor of the insured. Majority op., ¶ 15 (citing Estate of Sustache, 311 Wis. 2d 548, ¶ 21). However, it fails to follow this directive in its analysis of the "Your Product" exclusion in Consolidated's policy.
¶ 80. Consolidated's policy excludes coverage for " 'Property damage' to 'your product' arising out of it or any part of it." It defines "Your product" as "[a]ny goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by G you."
¶ 81. Water Well argues that that the "Your Product" exclusion does not apply because the complaint is ambiguous as to what property was damaged when the well pump fell to the bottom of the well. According to the *654 majority, "[t]he Argonaut complaint contains no allegation that any damage occurred to anything other than Water Well's products." Majority op., ¶ 36; see also Majority op., ¶ 37 ("there is absolutely no indication in the complaint that any damage occurred to anything other than the well pump."). Thus, the majority concludes that that "Your Product" exclusion applies and that Consolidated had no duty to defend Water Well.
¶ 82. Contrary to the majority, I would draw all reasonable inferences in favor of the insured. Although there is no allegation of damage to any pre-existing product, there is also no allegation that when the pump fell to the bottom of the well the damage was exclusively to Water Well's products. It is just as reasonable to infer that other products were damaged as it is to infer that only Water Well's products were damaged.
¶ 83. In particular, the complaint alleges that the damaged well pump included a "column of pipes." Based on the allegations in the complaint, it is reasonable to infer that the column of pipes consisted of pipe that was not Water Well's product. For example, the complaint alleges that Water Well "install[ed] at least 1 new fourteen-foot section of pipe." It also alleges that Water Well "rethread[ed] pipe as needed."
¶ 84. Thus, it is also reasonable to infer that Water Well installed only one new section of pipe and that it only repaired some of the other existing pipe as needed. After resolving all ambiguity in favor of the insured, I conclude that the "Your Product" exclusion does not apply and Consolidated had a duty to defend Water Well.
¶ 85. Alternatively, if the known facts extrinsic to the complaint are considered, it is undeniable that the "Your Product" exclusion does not apply. In its *655 motion for summary judgment before the circuit court, Water Well introduced uncontested evidence that that the alleged damage to the city well included damage to product that was not Water Well's product. Water Well's operations manager averred in an affidavit that although the pipe column in the well did contain new pipe provided by Water Well, it also contained preexisting pipe. The affidavit further stated that Water Well reused most of the pre-existing pipe sections and only cut and rethreaded (through the work of a subcontractor) those sections of the pre-existing pipe that needed repairing.
¶ 86. Considering Water Well's affidavit, it appears that products other than Water Well's, such as the pre-exiting pipe, were damaged when the pump fell to the bottom of the well. These are known facts that are not explicitly included in the allegations in the complaint. However, if we consider these extrinsic facts, the "Your Product" exception does not apply and Consolidated would have a duty to defend Water Well.
VI
¶ 87. Because I conclude that the "Your Product" exclusion does not apply, I must examine whether the "Your Work" exclusion applies.[6] Consolidated's policy excludes " 'Property damage'" to 'your work' arising out of it or any part of it. . ." However, there is an exception to the exclusion. The "Your Work" exclusion *656 does not apply "if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor."
¶ 88. Water Well argues that the "Your Work" exclusion does not apply because the subcontractor exception restores coverage. Although the complaint does not specifically allege that a subcontractor performed the work out of which the damage arose, the allegations in the complaint repeatedly refer to "Water Well, its agents, employees and representatives."
¶ 89. The term "agent" is very broad and can be understood to include a subcontractor when assuming all reasonable inferences in favor of the insured. See, e.g., Black's Law Dictionary 75 (10th ed. 2014) (defining "agent" as "[sjomeone who is authorized to act for or in place of another; a representative"); see also Restatement (Third) of Agency, § 1.01 (Am. Law Inst. 2006) ("Agency is the fiduciary relationship that arises when one person (a 'principle') manifests asset to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assert or otherwise consents so to act."). Thus, the subcontractor exception to the "Your Work" exclusion ought to apply to reinstate coverage.
¶ 90. Alternatively, if we consider the known facts extrinsic to the complaint, there is no doubt that the subcontractor exception applies to restore coverage under the "Your Product" exclusion. At summary judgment, Water Well introduced evidence that a subcontractor performed work on the well, including cutting and rethreading pipe and drilling and tapping screw holes. Attached to Water Well's affidavit is an invoice from a subcontractor detailing its work on the well pump.
*657 ¶ 91. Considering Water Well's affidavit, the attached receipt substantiates that a subcontractor performed work on the well pump. Thus, the known facts extrinsic to the complaint demonstrate that the subcontractor exception to the "Your Work" exclusion restores coverage.
VII
¶ 92. In sum, I conclude that when the complaint is factually incomplete or ambiguous, Wisconsin should adopt the narrow known fact exception to the four-corners rule as presented by Water Well. To do otherwise unfairly denies an insured the benefit of a defense to which it is entitled.
f 93. I also conclude that neither the "Your Product" exclusion nor the "Your Work" exclusion bars coverage. Accordingly, I respectfully dissent.
¶ 94. I am authorized to state that Justice SHIRLEY S. ABRAHAMSON joins this dissent.

 Currently, thirty-one states allow for exceptions to the four-comers rule in determining whether a duty to defend exists. Chandler v. Alabama Mun. Ins. Co., 585 So. 2d 1365, 1367 (Ala. 1991); Williams v. GEICO Cas. Co., 301 P.3d 1220, 1225 (Alaska 2013); Regal Homes, Inc. v. CNA Ins., 217 P.3d 610, ¶ 19 (Ariz. Ct. App. 2007); Safeco Ins. Co. of America v. Fireman's Fund Ins. Co., 55 Cal. Rptr. 3d 844, 850 (Ct. App. 2007); Hartford Cas. Ins. Co. v. Litchfield Mut. Fire Ins. Co., 876 A.2d 1139, 1145—1146 (Conn. 2005); Shafe v. Am. States Ins. Co., 653 S.E.2d 870, 874 (Ga. 2007); Sentinel Ins. Co. v. First Ins. Co. of Haw., 875 P.2d 894, 905 (Haw. 1994); Shriver Ins. Agency v. Utica Mut. Ins. Co., 750 N.E.2d 1253, 1259 (Ill. 2001); Talen v. Emp'rs Mut. Cas. Co., 703 N.W.2d 395, 406 (Iowa 2005); Miller v. Westport Ins. Corp., 200 P.3d 419, 424 (Kan. 2009); Aetna Cas. & Sur. Co. v. Cochran, 651 A.2d 859, 864 (Md. 1995); Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 788 N.E.2d 522, 530 (Mass. 2003); Am. Bumper & Mfg. Co. v. Hartford Fire Ins. Co., 550 N.W.2d 475, 452 (Mich. 1996); Pedro Cos. v. Sentry Ins., 518 N.W.2d 49, 51 (Minn. Ct. App. 1994); Auto. Ins. Co. of Hartford v. Lipscomb, 75 So.3d 557, 559 (Miss. 2011); Allen v. Cont'l W. Ins. Co., 436 S.W.3d 548, 552-53 (Mo. 2014); Revelation Industries, Inc. v. St. Paul Fire & Marine Ins. Co., 206 P.3d 919, 926 (Mont. 2009); Peterson v. Ohio Cas. Group, 724 N.W.2d 765, 773-774 (Neb. 2006); Ross v. Home Ins. Co., 773 A.2d 654, 657 (N.H. 2001); Abouzaid v. Mansard Gardens Assocs., LLC, 23 A.3d 338, 347 (N.J. 2011); Sw. Steel Coil, Inc. v. Redwood Fire & Casualty Ins. Co., 148 P.3d 806, 812 (N.M. 2006); Cumberland Farms, Inc. v. Tower Grp., Inc., 28 N.Y.S.3d 119, 122 (N.Y. App. Div. 2016); Duke University v. St. Paul Fire & Marine Ins. Co., 386 S.E.2d 762, *644 764 (N.C. 1990); Great Am. Ins. Co. v. Hartford Ins. Co., 621 N.E.2d 796, 798 (Ohio 1993); First Bank of Turley v. Fid. & Deposit Ins. Co., 928 P.2d 298, 303 (Okla. 1996); City of Hartsville v. S.C. Mun. Ins. & Risk Fin. Fund, 677 S.E.2d 574, 578-79 (S.C. 2009); State Farm Fire & Cas. Co. v. Harbert, 741 N.W.2d 228, 234 (S.D. 2007); Fire Ins. Exchange v. Estate of Therkelsen, 27 P.3d 555, ¶¶ 24-25 (Utah 2001); R.L. Vallee, Inc. v. Am. Intern. Specialty Lines Ins. Co., 431 F. Supp. 2d 428, 438 (D. Vt. 2006); Campbell v. Ticor Title Ins. Co., 166 Wash. 2d 466, 471 (Wash. 2009); Farmer & Mechs. Mut. Ins. Co. of W. Va. v. Cook, 557 S.E.2d 801, 806 (W. Va. 2001).
In four states, because of conflicting cases, it is unclear whether they allow for exceptions to the four-corners rule. Compare Cotter Corp. v. Am. Empire Surplus Lines Ins. Co., 90 P.3d 814, 829 (Colo. 2004), with United Fire & Cas. Co. v. Boulder Plaza Residential, LLC, 633 F.3d 951, 960-61 (10th Cir. 2011); compare Transamerica Ins. Services v. Kopko, 570 N.E.2d 1283, 1285 (Ind. 1991), with Ind. Farmers Mut. Ins. Co. v. N. Vernon Drop Forge, Inc., 917 N.E.2d 1258, 1268 (Ind. Ct. App. 2009) (citing Auto-Owners Ins. Co. v. Harvey, 842 N.E.2d 1279, 1291 (Ind. 2006); compare James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co., 814 S.W.2d 273, 279 (Ky. 1991), with Lenning v. Commer. Union Ins. Co., 260 F.3d 574, 581 (6th Cir. 2001); compare GuideOne Elite Ins. Co. v. Fielder Road Baptist Church, 197 S.W.3d 305, 308 (Tex. 2006), with Weingarten Realty Mgmt Co. v. Liberty Mut. Fire Ins. Co., 343 S.W.3d 859 (Tex. Ct. App. 2011).

 In Estate of Sustache, the court of appeals examined whether the exceptions to the four-corners rule acknowledged in Griebe had been foreclosed by Doyle and Smith, but ultimately concluded only that "this issue warrants supreme court comment at some point in the future." Estate of Sustache, 2007 WI App 144, ¶ 20, 303 Wis. 2d 714, 735 N.W.2d 186.

 The assumption that a plaintiff will amend a complaint to trigger insurance coverage for a defendant after new facts arise in discovery is undermined by Atlantic Mut. Ins. Co. v. Badger Medical Supply Co., 191 Wis. 2d 229, 241, 528 N.W.2d 486 (1995), in which the defendant arguing in favor of coverage alleged that facts discovered in depositions triggered insurance coverage. However, the Atlantic court determined that no allegations in the amended complaint supported the insured's argument. Id.

 Although the majority sets forth the judicially-preferred approaches to determining coverage, its absolutist approach to the four-corners rule may incentive insurers to unilaterally deny coverage instead.

 The majority does not address the "Your Work" exclusion because it determines that the "Your Product" exclusion applies. Majority op., ¶ 33 (citing Am. Family Mut. Ins. Co. v. Am. Girl, Inc., 2004 WI 2, ¶ 24, 268 Wis. 2d 16, 673 N.W.2d 65).