This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-41336**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**DYLAN S.,**

      Child-Appellant.

**APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY**
**Jeffrey Shannon, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Lawrence M. Marcus, Assistant Solicitor General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**HENDERSON, Judge.**

**{1}** Child-Appellant Dylan S. (Child) appeals the district court's order declining his request for a consent decree. The district court reasoned that, to meet the purposes of the Children's Code, NMSA 1978, §§ 32A-1-1 to -28-42 (1993, as amended through 2024), and the Delinquency Act, which is part of the Children's Code, the court was required to adjudicate Child as a delinquent to exercise jurisdiction over his parents so that the court could compel them to participate in substance use counseling or

treatment. On appeal, Child argues that the denial of a consent decree violated his right to equal protection under the New Mexico and United States Constitutions because the district court treated Child differently than other similarly situated children. For the following reasons, we affirm.

## BACKGROUND

**{2}**    In August 2022, the State alleged that Child committed two delinquent acts. It then submitted a proposed plea agreement, providing for a six-month consent decree pursuant to Section 32A-2-22. At a hearing on the plea agreement, a court-appointed guardian ad litem noted that, to enable a conducive environment to Child's rehabilitation, "both parents need[ed] to resolve [their] addiction issues." As a result, the district court rejected the proposed consent decree because, without an adjudication of delinquency, it was unable to order Child's parents to participate in services pursuant to the Delinquency Act, *see* § 32A-2-28, which were necessary to reintegrate the Child into his home and community. Child appeals.

## DISCUSSION

**{3}**    Child contends that the district court denied him equal protection under the law pursuant to the Fourteenth Amendment of the United States Constitution and Article II, Section 18 of the New Mexico Constitution by denying his request for a consent decree[1] because of his father's substance abuse.[2] *See* U.S. Const. amend. XIV, § 1 ("No [s]tate shall . . . deny to any person within its jurisdiction the equal protection of the laws."); N.M. Const., art. II, § 18 ("No person shall . . . be denied equal protection of the laws."). Specifically, Child asserts that because he and other allegedly delinquent children are similarly situated, the district court's decision to adjudicate Child as a delinquent, while granting other allegedly delinquent children a consent decree without an adjudication of delinquency, constitutes a violation of the equal protection clauses of the state and federal constitutions. As previously noted, Child appears to claim no discriminatory classification in the language of the statute, but instead appears to assert that the district court violated the equal protection clauses in its interpretation and enforcement

---

[1]It is not entirely clear from Child's briefing whether his equal protection claim raises a facial challenge to Section 32A-2-28, or another provision of the Delinquency Act; an unequal enforcement or administration of a facially neutral statute challenge; a "class of one" challenge; or some other type of equal protection challenge. *Compare* 16B C.J.S. *Constitutional Law* § 1267 (2024), *with* § 1271 (2024), *and* § 1260 (2024). Given Child's reliance on *Snowden v. Hughes*, 321 U.S. 1, 8-10 (1944), and *In re Laurence T.*, 403 A.2d 1256 (Md. 1979), both of which deal with unequal enforcement or administration equal protection claims, we understand Child to be raising such a claim.

[2]Child also asserts that the denial of the consent decree violated his substantive due process rights because he did not "receive equal protection of the laws in his delinquency case." "Substantive due process cases inquire whether a statute or government action shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *Wagner v. AGW Consultants*, 2005-NMSC-016, ¶ 30, 137 N.M. 734, 114 P.3d 1050 (internal quotation marks and citation omitted). However, we decline to address this issue because Child failed to develop any argument on appeal. Child's assertion that the denial of a consent decree violated rights protected by substantive due process comprises one sentence in his briefing. We will "not review unclear or undeveloped arguments [that] require us to guess at what [a] part[y's] arguments might be." *State v. Fuentes*, 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181.

of the law. We begin by determining the proper level of scrutiny we should apply to Child's challenge.

## I.    Level of Scrutiny

**{4}**    Child stipulates that his equal protection claim is analyzed under the rational basis standard. *See, e.g.*, *Marrujo v. N.M. Highway Transp. Dep't*, 1994-NMSC-116, ¶ 12, 118 N.M. 753, 887 P.2d 747 (applying the rational basis standard to those interests "that are not fundamental rights, suspect classifications, important individual interests, and sensitive classifications"); *Nordlinger v Hahn*, 505 U.S. 1, 10 (1992) ("[U]nless a classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest."). In support of rational basis review, Child cites "age and income-based classifications." *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 441 (1985) (stating that the United States Supreme Court has declined "to extend heightened review to differential treatment based on age"); *State v. Setser*, 1997-NMSC-004, ¶ 15, 122 N.M. 794, 932 P.2d 484 (stating that rational basis is the "appropriate standard because . . . age classification . . . does not adversely impact a fundamental right, nor does it create a suspect classification"); *Harris v. McRae*, 448 U.S. 297, 323 (1980) ("[T]his Court has held repeatedly that poverty, standing alone[,] is not a suspect classification."); *State v. Brown*, 2004-NMCA-037, ¶ 22, 135 N.M. 291, 87 P.3d 1073 ("Wealth . . . is not a suspect class."), *overruled on other grounds*, 2006-NMSC-023, ¶ 25, 139 N.M. 466, 134 P.3d 753. In absence of any reasoned argument from Child why a heightened standard should apply, we apply rational basis review in this case.[3]

**{5}**    For equal protection claims under the United States Constitution, the federal rational basis test "only requires a reviewing court to divine the *existence* of a *conceivable* rational basis" to uphold the state action against a constitutional challenge. *See Rodriguez v. Brand W. Dairy*, 2016-NMSC-029, ¶ 26, 378 P.3d 13 (second emphasis added) (internal quotation marks and citation omitted). For claims under the New Mexico Constitution, our Supreme Court has adopted a modified rational basis

---

[3]We briefly note that the classification at issue in this case appears to be between children of parents *with* substance use disorders and children of parents *without* substance use disorders. The level of scrutiny applicable to such a classification is unclear based on our review. Determining the appropriate level of scrutiny for a classification based on whether a parent has a substance use disorder would require us to consider, for example, extending the definition of suspect classifications like developmental disability and parentage, without any argument from the parties. *See, e.g., Cleburne Living Ctr.*, 473 U.S. at 446 (holding that people with developmental disabilities are not a quasi-suspect class); *Breen v. Carlsbad Mun. Schs.*, 2005-NMSC-028, ¶ 28, 138 N.M. 331, 120 P.3d 413 (holding that intermediate scrutiny applies to classifications based on developmental disability under New Mexico's equal protection clause); *Astrue v. Capato ex rel. B.N.C.*, 566 U.S. 541, 557 ("We have applied an intermediate level of scrutiny to laws burdening illegitimate children for the sake of punishing the illicit relations of their parents, because visiting this condemnation on the head of an infant is illogical and unjust." (alteration, internal quotation marks, and citation omitted)). As such, we decline to do so. *See State v. Vasquez*, 2025-NMSC-008, ¶ 30, 563 P.3d 901 ("This Court does not address claims that are not thoroughly briefed or developed.").

test. *See id.* ¶ 25. New Mexico's "more robust standard establishes rational basis review in arguments and evidence offered by the challengers or proponents of a [state action] rather than requiring the challengers to anticipate and address every stray speculation that may pop into a judge's head at any point in the case." *Id.* ¶ 27. Thus, to advance a successful challenge "under this [modified] standard of review, [a challenger] must demonstrate that the classification created by the [state action] is not supported by a firm legal rationale or evidence in the record." *Wagner v. AGW Consultants*, 2005-NMSC-016, ¶ 24, 137 N.M. 734, 114 P.3d 1050 (internal quotation marks and citation omitted). With these standards in mind, we turn to the facts of this case.

## II. Child's Equal Protection Challenge

{6}     As Child and the State recognize, when determining whether unequal enforcement or administration of a facially neutral statute results in an equal protection violation, we first ask whether there was "an element of intentional or purposeful discrimination." *Snowden v. Hughes*, 321 U.S. 1, 8-9 (1944); *see Barber's Super Mkts, Inc. v. City of Grants*, 1969-NMSC-115, ¶ 19, 80 N.M. 533, 458 P.2d 785 ("[U]nequal administration of the law or ordinance, so as to violate the State and United States Constitutions, will not result unless an intentional or purposeful discrimination is shown, and . . . this cannot be presumed."). This purpose may be shown "on the face of the action taken with respect to a particular class or person, or . . . by extrinsic evidence showing a discriminatory design to favor one individual or class over another." *Snowden*, 321 U.S. at 8 (citation omitted). Second, we ask whether the state's intentional discrimination is justified by a constitutionally permissible governmental interest, as determined under the proper level of scrutiny. *See id.* at 11 ("[S]tate action, even though illegal under state law, can be no more and no less constitutional under the Fourteenth Amendment than if it were sanctioned by the state legislature."); *State v. Tafoya*, 2010-NMSC-019, ¶ 26, 148 N.M. 391, 237 P.3d 693 (reviewing a defendant's equal protection challenge under rational basis and holding that a defendant's equal protection rights were not violated when the sentencing court modified his eligibility for good time credit because the court's discretion "is rationally related to the goals of punishment as well as rehabilitation"); *see also Nordlinger*, 505 U.S. at 11 ("The appropriate standard of review is whether the difference in treatment . . . rationally furthers a legitimate state interest.").

{7}     In this case, the district court rejected the consent decree in order to exercise jurisdiction over Child's parents who needed substance abuse treatment. Child argues this amounts to intentional discrimination because "[t]he district court deliberately and intentionally treated [Child] differently from all other alleged juvenile delinquent children in the judicial district because his parents had drug issues." *But see Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) ("'Discriminatory purpose,' however, implies more than intent as volition or intent as awareness of consequences. It implies that the decision[ ]maker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." (footnote omitted) (citation omitted)). The State does not address this argument in its answer brief and instead focuses on whether there was "a rational basis for the state

action." However, we assume for purposes of our analysis that Child has shown intentional discrimination, and we necessarily focus on the second prong of the equal protection analysis.

**{8}**     In addressing the government interest in this case, Child argues that "[t]here is no reasonable rationale to deny [him] a consent decree without a finding of delinquency solely because of the faults of his parents." The district court explicitly stated that it rejected the consent decree because, without "the authority to mandate treatment and rehabilitation of [Child's] parents pursuant to [the Delinquency Act,]" the court could not fulfill the requirement of the Children's Code to strengthen Child's family.[4] Thus, our review under both the Fourteenth Amendment and Article II, Section 18 requires examination of the legislative purposes of the Delinquency Act and the Children's Code to determine whether the district court's rejection of the consent decree was in furtherance of a legitimate government interest. Then, we review the question pursuant to the New Mexico and federal rational basis standards in turn.

**{9}**     The Children's Code has several enumerated purposes, including two which are relevant to our analysis:

> (A)     first to provide for the care, protection and wholesome mental and physical development of children coming within the provisions of the Children's Code and then to preserve the unity of the family whenever possible. A child's health and safety shall be the paramount concern
>
> . . . . ;
>
> (C)     to provide a continuum of services for children and their families, from prevention to treatment, considering whenever possible prevention, diversion and early intervention, particularly in the schools.

Section 32A-1-3(A), (C). In enacting the Children's Code, "[t]he Legislature sought to provide for the care, protection, and development of children and to ensure that procedures were in place to effectuate that goal." *State v. Diggs*, 2009-NMCA-099, ¶ 13, 147 N.M. 122, 217 P.3d 608. "The Children's Code shall be interpreted and construed to effectuate the[se] . . . purposes." Section 32A-1-3.

---

[4]Child argues that the district court, pursuant to Rule 10-228(A) NMRA, could have entered a consent decree, even after an adjudication of delinquency, and that this possibility undercuts any rational basis for the district court's rejection of the consent decree. We reject this argument for several reasons. First, it appears this argument was not preserved. Second, as Child recognizes, a consent decree after adjudication would not address the alleged harm claimed by Child from an adjudication of delinquency. Third, to address this assertion, we would have to interpret Rule 10-228(A) in accordance with the purposes of the Children's Code, and Child has failed to advance any such argument. *See Vasquez*, 2025-NMSC-008, ¶ 30. We therefore give no further consideration to Child's arguments.

**{10}** Additionally, New Mexico courts have had several occasions to examine the Legislature's purpose in enacting the Delinquency Act. These interpretations of the Act are guided by its primary purpose, which is

> consistent with the protection of the public interest, to remove from children committing delinquent acts the adult consequences of criminal behavior, but to still hold children committing delinquent acts accountable for their actions to the extent of the child's age, education, mental and physical condition, background and all other relevant factors, and to provide a program of supervision, care and rehabilitation.

Section 32A-2-2(A). "Thus, unlike the adult criminal justice system, with its focus on punishment and deterrence, the juvenile justice system reflects a policy favoring the rehabilitation and treatment of children." *State v. Jones*, 2010-NMSC-012, ¶ 35, 148 N.M. 1, 229 P.3d 474 (internal quotation marks and citation omitted). Our Supreme Court has further clarified that the goals of the Delinquency Act also include "accountability, deterrence, protection of the public, and punishment for the crime committed." *Tafoya*, 2010-NMSC-019, ¶ 18.

**{11}** Here, the discretion the district court exercised in adjudging Child a delinquent is rationally related to the Children's Code's goal of safety and the Delinquency Act's goal of rehabilitation. *See id.* ¶ 26. Child was denied a consent decree and was adjudged delinquent because the district court determined that it was necessary to exercise jurisdiction over Child's parents and order them to attend substance use counseling for Child to be properly rehabilitated. This determination was supported by the guardian ad litem's recommendations, which the district court adopted. Thus, Child's argument fails New Mexico's modified rational basis test because he has not shown that the district court's distinction between him and other allegedly delinquent children is unsupported by "a firm legal rationale or evidence in the record." *See Wagner*, 2005-NMSC-016, ¶ 24 (internal quotation marks and citation omitted). Child's argument then necessarily fails the federal rational basis test because there is a conceivable reason supporting the district court's decision to grant some allegedly delinquent children a consent decree and to reject a consent decree for others. *See Rodriguez*, 2016-NMSC-029, ¶ 26. We therefore conclude that the district court's rejection of a consent decree did not violate Child's rights to equal protection under either the Fourteenth Amendment or Article II, Section 18.

**CONCLUSION**

**{12}** For the foregoing reasons, we affirm the district court's rejection of Child's requested consent decree.

**{13}  IT IS SO ORDERED.**

**SHAMMARA H. HENDERSON, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**KRISTINA BOGARDUS, Judge**